In re **MARINER POST–ACUTE NETWORK, INC., and affiliates, Debtors.**

**NovaCare Holdings, Inc., Plaintiff,**

v.

**Mariner Post–Acute Network, Inc., Grancare, Inc.; American–Cal Medical Services, Inc.; AMS Properties, Inc.; Clintonaire Nursing Home, Inc.; Crestmont Health Center, Inc.; EH Acquisition Corp. III; Frenchtown Nursing Home, Inc.; GCI Health Care Centers, Inc.; Heritage Nursing Home, Inc.; Middlebelt–Hope Nursing Home, Inc.; National Heritage Realty, Inc.; Nightingale East Nursing Center, Inc.; Cambridge North, Inc.; Cambridge South, Inc.; GCI Palm Court, Inc.; HMI Convalescent Care, Inc.; Hostmasters, Inc.; Madonna Nursing Center, Inc.; Middlebelt Nursing Home, Inc.; and Anthony Nursing Home, Inc., Debtor–Defendants,**

and

**The Chase Manhattan Bank, N.A., Individually, and as the Collateral Agent for Certain Banks and Financial Institutions; Omega Healthcare Investors, Inc., and Lasalle National Bank, N.A., Defendants.**

Bankruptcy Nos. 00–113 (MFW), through 00–214(MFW).
Adv. No. 00–1577 (MFW).

United States Bankruptcy Court, D. Delaware.

Sept. 17, 2001.

Mark D. Collins, Richards Layton & Finger, P.A., Wilmington, DE, Isaac M. Pachulski, George Webster, II, Stutman Treister & Glatt, P.C., Los Angeles, CA, for Debtors.

Laura Davis Jones, Bruce Grohsgal, Pachulski Stang Ziehl Young & Jones, Wilmington, DE, for Official Committee of Unsecured Creditors.

Lawrence G. McMichael, Anne Marie P. Kelley, Dilworth Paxson, LLP, Cherry Hill, NJ, Robert F. Stewart, Jr., Dilworth Paxson, LLP, Wilmington, DE, for Nova-Care Holdings, Inc.

Adam G. Landis, Kathleen P. Makowski, Klett Rooney Lieber & Schorling, Wilmington, DE, Thomas C. Rice, Kenneth S. Ziman, Simpson Thatcher & Bartlett, New York City, for Chase Manhattan Bank.

Jeffrey C. Wisler, Connolly, Bove, Lodge & Hutz, Wilmington, DE, Judy A. O'Neill, Sherrie L. Farrell, Dykema Gossett PLLC, Detroit, MI, for Omega Healthcare Investors, Inc.

## OPINION [1]

MARY F. WALRATH, Bankruptcy Judge.

■ Before the Court are the Motions of the Debtors, Omega Healthcare Investors, Inc. ("Omega"), and Chase Manhattan Bank, N.A. ("Chase") (collectively "the Defendants") to Dismiss the complaint filed by NovaCare Holdings, Inc. ("NCH"). For the reasons set forth below, we deny the Motions.

## I. FACTUAL BACKGROUND [2]

On January 18, 2000, Mariner Post–Acute Network, Inc., and several of its

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. Where a party has filed a motion to dismiss

affiliates (collectively "the Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code. A hearing was held on January 19 to consider several emergency matters including the Debtors' Emergency Motion ("the Financing Motion") for approval of post-petition financing to be provided by certain lenders ("the DIP Lenders") and use of cash collateral of the Pre–Petition Secured Lenders.[3] Notice of the interim hearing on the Financing Motion was given to NCH,[4] which was one of the twenty largest unsecured creditors of the Debtors. On January 24, 2000, we entered an interim order approving the use of cash collateral and post-petition financing ("the First Interim Order"). Because the security interests of the Pre–Petition Secured Lenders in the Debtors' assets were being primed by the security interests granted to the DIP Lenders, the First Interim Order included, *inter alia*, the following provision:

> As additional adequate protection, so long as no Event of Default or event, which upon notice or lapse of time or

both, would constitute an Event of Default shall have occurred and be continuing, the Debtors are authorized and directed to pay to the Pre–Petition Agent, for the benefit of the Pre–Petition Secured Lenders, the cash proceeds of any "prudent buyer" settlement entered into with the United States Health Care Financing Administration and 75% of the Net Proceeds of asset sales or dispositions (other than of Excluded Pre–Petition Collateral) that are permitted under the [DIP] Credit Agreement and are not required to be applied to the loans thereunder.

(*See* First Interim Order at ¶ 14.) On February 2, 2000, a Second Interim Order authorizing use of cash collateral and post-petition financing was entered containing the same language. On March 23, 2000, a Final Order was entered containing the same language. (The Interim and Final Orders are referred to collectively as "the Financing Orders.") NCH did not object to any of the Financing Orders.[5]

---

for failure to state a claim as the Defendants have here, the Court must accept the allegations of the complaint as true and draw all reasonable factual inferences in favor of the plaintiff. *See, e.g., Weston v. Commonwealth of Pennsylvania*, 251 F.3d 420, 425 (3d Cir. 2001); *Semerenko v. Cendant Corp.*, 223 F.3d 165, 180 (3d Cir.2000). We therefore accept all of the allegations of the complaint as fact for the purpose of deciding these Motions. We also take judicial notice of the orders entered in this case with respect to the Debtors' request for post-petition financing and use of cash collateral. *See, e.g., Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group, Ltd.*, 181 F.3d 410, 426 (3d Cir.1999) (in resolving motion to dismiss, court may consider public records, including judicial proceedings, in addition to the allegations of the complaint).

3. The Pre–Petition Secured Lenders are a consortium of lenders who extended credit to the Debtors pre-petition in excess of $1 billion. Chase Manhattan Bank ("Chase") is the

collateral agent for the Pre–Petition Secured Lenders. Some of the Pre–Petition Lenders are also DIP Lenders.

4. *See* note 8 *infra*.

5. One of the cross-defendants, Omega Healthcare Investors, Inc. ("Omega") did file an objection to the Financing Motion asserting that it had a first priority lien in assets of certain of the Debtors, including a security interest in rents. That objection was resolved in the Interim Orders by inclusion of language that gave it a replacement lien in post-petition rent and confirmed that the Orders were not intended to prime its position. (*See* First Interim Order at ¶ 32; Second Interim Order at paragraph 30). In the Final Order, language was inserted that dealt with the specifics of the respective rights of Omega, the DIP Lenders and the Pre–Petition Secured Lenders in the assets of the Debtors in which Omega asserted a secured position. (*See* Final Order at ¶¶ 30 through 33.)

Subsequently, on October 5, 2000, NCH filed the instant adversary proceeding against certain of the Debtors, Chase as agent for the Pre–Petition Secured Lenders and Omega, seeking turnover of certain funds which it claimed to be held in constructive trust for it, a determination that the funds were not property of the estate, a determination that NCH has a security interest or equitable lien in those monies, and certain other equitable relief. NCH also filed a Motion for a Preliminary Injunction precluding the Debtors from entering into any settlement with the United States Health Care Financing Administration ("HCFA") regarding those monies or transferring those monies to anyone else until the issues raised by the adversary could be heard and decided.

In its complaint NCH asserts that it had provided services to certain facilities for the Debtors. Pursuant to the agreement between the parties, the Debtors promptly paid NCH for the services provided and processed Medicare reimbursement requests for the services rendered by NCH. If the reimbursement request was disallowed by HCFA, NCH agreed to repay the Debtors promptly, by cash or offset against other sums due it. NCH was given the right to appeal the HCFA decision in the name of the Debtors, at its own expense, and, if NCH was successful, the Debtors agreed to remit to NCH any funds paid to them by HCFA as a result of that appeal. Pre-petition, NCH had issued credits to the Debtors for approximately $8 million in Medicare disallowances and had filed appeals of those disallowances in the name of the Debtors. Those funds are referred to herein as the Prudent Buyer Appeal Mo-

nies. The appeals of the disallowances are still pending.

The appeals being prosecuted by NCH also include other disallowed expenses due the Debtors by HCFA, which NCH says the Debtors requested that it appeal on their behalf. NCH asserts that the Debtors agreed to reimburse it for attorneys' fees and costs incurred in prosecuting those appeals. NCH seeks an administrative claim for those fees and costs, as well as for its $8 million claim.

The Debtors, Chase and Omega all filed Motions to Dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, incorporated by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, for failure to state a claim upon which relief can be granted. At the pretrial hearing held on December 12, 2000, it was agreed that the Debtors would not enter into any settlement with HCFA or disburse the Prudent Buyer Appeal Monies before briefing and decision on the Motions to Dismiss.[6] The parties have now briefed the issues raised by the Motions.

## II. JURISDICTION

This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(1), (b)(2)(A), (D), (K), (M), (N), and (O).

## III. DISCUSSION

 A motion to dismiss for failure to state a claim upon which relief may be granted should be denied unless it appears certain that the plaintiff is entitled to no relief under any set of facts that could be proven in support of the claim. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 521, 92

---

6. Subsequently, the Debtors filed a Motion for Summary Judgment, to which NCH filed a Motion for extension of time to answer asserting that discovery was necessary. At the

hearing held on March 21, 2001, we stayed all other matters until we could issue a decision on the Motions to Dismiss.

S.Ct. 594, 30 L.Ed.2d 652 (1972). The burden of establishing this is on the movants. *See, e.g., Johnsrud v. Carter,* 620 F.2d 29, 33 (3d Cir.1980).

### A. *Res Judicata*

In their Motions to Dismiss, the Defendants assert that the bulk of the claims asserted by NCH in its complaint must be dismissed because the Court has already determined, in the Financing Orders, that the Prudent Buyer Appeal Monies must be turned over to the Pre–Petition Secured Lenders. They view the complaint as an impermissible collateral attack on the Financing Orders. Res judicata, they assert, precludes the relief sought by NCH in its complaint.

Res judicata (or claim preclusion) is a judicial doctrine which precludes a party from relitigating claims that were or could have been asserted in an earlier action. For res judicata to apply, three elements must be established: ·(1) a final judgment on the merits of a prior action; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action. *See, e.g., Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc.—Pension Fund v. Centra,* 983 F.2d 495, 504 (3d Cir.1992).[7]

The Defendants assert that the NCH adversary must be dismissed under the doctrine of res judicata because the issue of entitlement to the Prudent Buyer Appeal Monies was finally determined in the Financing Orders and no appeal of those Orders was filed by NCH. They cite to numerous cases applying res judicata to final orders entered in bankruptcy cases. *See, e.g., Celotex Corp. v. Edwards,* 514 U.S. 300, 313, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (collateral attack in state court of section 105 injunction was not permitted); *Maggio v. Zeitz,* 333 U.S. 56, 68, 68 S.Ct. 401, 92 L.Ed. 476 (1948) (turnover order was final and not subject to collateral attack); *Maryland v. Antonelli Creditors' Liquidating Trust,* 123 F.3d 777, 783 (4th Cir.1997) (confirmation order could not be collaterally attacked).

The Defendants also cite to cases where financing orders have been held to be final orders and not subject to collateral attack. *See, e.g., Spartan Mills v. Bank of Am. Ill.,* 112 F.3d 1251 (4th Cir.1997) (state court suit by creditor asserting superior lien on debtor's assets to that of bank's lien which had been granted by bankruptcy court in a financing order was dismissed on res judicata grounds); *Bensten v. Grant (In re Gloria Mfg. Corp.),* 65 B.R. 341, 344–45 (E.D.Va.1985) (financing orders were final and could not be re-litigated even if they were wrong).

NCH asserts that the doctrine of res judicata does not apply for numerous reasons. Its principle arguments are (1) that the Financing Orders did not determine the issues that are the subject of the adversary (namely, whether NCH has any interest in the Prudent Buyer Appeal Monies), and (2) that adequate notice was not provided to NCH that the Court was being asked to decide those issues in the Financing Orders.[8]

---

**7.** NCH initially responds that this matter is not covered by issue preclusion, which requires that the issue must actually have been litigated and decided by the prior order. *See, e.g., First Jersey National Bank v. Brown (In re Brown ),* 951 F.2d 564, 569 (3d Cir.1991). Issue preclusion (collateral estoppel) and claim preclusion (res judicata) are different concepts. We address this issue under the doctrine of res judicata.

**8.** While NCH asserts that it did not receive all the pleadings and notices relevant to the Financing Motion, we need not decide that disputed fact. Even if NCH had received all the notices and other pleadings related to the

■ While the Defendants are correct that res judicata is applicable to bankruptcy court orders, application of that doctrine in bankruptcy cases is not as straightforward as in other cases. In considering the application of res judicata to bankruptcy proceedings, it is important to recognize the difference between bankruptcy cases and typical civil litigation. In the latter, identifying the parties and the cause of action is relatively easy to do: the parties are those named in the complaint who have been duly served and the issues are those articulated by the pleadings.

In contrast, in bankruptcy cases the parties in interest may include the debtor, all its creditors and all its shareholders. Additionally, a particular matter in a bankruptcy case may affect the debtor's employees, its vendors, its landlords, parties to contracts with the debtor, and numerous other parties. These parties are not typically named in the Motion or Application.

Further the issues that may be litigated in the bankruptcy court are far reaching and include determinations of title to and liens on property, the sale of property, claims against the debtor and others related to the debtor, claims which the debtor may have against others, as well as numerous issues involving the debtor's operations and eventual business and financial restructuring. However, all of these issues (though the bankruptcy court may ultimately hear and decide them) are not expected to be litigated at one time. That is, the fact that a particular party may have an interest in a motion does not require that party to raise all interests or claims that it has in the bankruptcy case generally at the time that the motion is heard. However, this on its face is what

res judicata appears to require. To apply res judicata so broadly would bring bankruptcy cases to a halt.

■ Given these unique factors, determining the parameters of litigation in bankruptcy cases, so as to apply the doctrine of res judicata, is often difficult. The purpose of res judicata is to require that parties to a suit bring all claims related to that suit at once so that the court is not required to litigate the same or related issues more than once. In the bankruptcy context, however, the same parties may be involved in numerous contested matters dealing with their relationships, but they are not typically expected to litigate all matters at once. For example, in the context of a motion to reject a lease, the landlord would not be expected to litigate the amount of any damages it may have as a result of the rejection. Similarly, a creditor who receives a notice of a motion to estimate the amount of reserves which the debtor must keep for disputed claims would not be expected to litigate the amount of its claim at that time. *See, e.g., Manus Corp. v. NRG Energy, Inc. (O'Brien Envtl. Energy, Inc.)*, 188 F.3d 116 (3d Cir.1999).

■ Recognizing the difficulty of applying the doctrine of res judicata to bankruptcy cases, the Third Circuit has recently provided some guidance in this area:

Difficult as it may be to define the contours of a cause of action in a bankruptcy setting, we conclude that a claim should not be barred unless the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding *are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have*

Financing Orders, for the reasons stated below, we conclude that they were insufficient to put it on notice that the Financing Orders

would determine that NCH had no equitable or other interest in the Prudent Buyer Appeal Monies.

*brought them both at the same time* in the bankruptcy forum.

*Eastern Minerals & Chems. Co. v. Mahan,* 225 F.3d 330, 337–38 (3d Cir.2000) (emphasis added).

With these considerations, we cannot conclude that the doctrine of res judicata precludes NCH from pursuing its law suit. We find that the claims raised by NCH are not so close to anything actually litigated in connection with the Financing Motion as to make it unreasonable for NCH not to have raised them at the time.

1. *The Financing Orders Did Not Decide Title to the Prudent Buyer Appeal Monies*

 The Defendants argue that the Financing Orders are determinative of the issues raised by NCH in its complaint because the Court determined that the Debtors were entitled to the Prudent Buyer Appeal Monies (and conversely that NCH had no interest in them). The Defendants argue that the Court *must* have made such a determination because the Financing Orders direct that the Debtors turn over those monies to the Pre–Petition Secured Creditors.

However, that conclusion is not compelled by the actual language of the Financing Orders and related pleadings. Paragraph 14 does not state that the Prudent Buyer Appeal Monies are owned by the Debtors. It simply states that any such funds that are actually due to the Debtors' estate and paid in cash will be turned over to the Pre–Petition Secured Lenders.

Furthermore, nowhere in the Financing Orders, Financing Motion, Notices, Responses or the transcripts is there any suggestion that the Court was being *asked* to determine the Debtors' right, title or interest in the Prudent Buyer Appeal Monies. Nor was any suggestion made by counsel for the Debtors at the hearing on the Financing Motion that the issue of title was being decided. The only reference to the Prudent Buyer Appeal Monies at the hearings was at the initial hearing, where counsel for the Debtors explained:

> In addition, there is a, what's been referred to as the prudent buyer money. There is in process with the federal government a potential refund to the debtors of amounts *which may well be due and owing to the estates from the government.* If and to the extent those were paid in cash, then those would also be devoted to adequate protection payments for the prepetition bank group.

(1/19/01 Transcript at pp. 116–17 (emphasis added).) [9]

This colloquy suggests that, rather than asking the Court to determine contested title to the Prudent Buyer Appeal Monies, the Debtors were only asking for authority to give the Pre–Petition Secured Lenders whatever was actually *due to the Debtors' estate* (and paid in cash). To the extent NCH is correct, and it is entitled to the Prudent Buyer Appeal Monies, they would not be due to the Debtors' estate and, therefore, were not covered by the Financing Orders. Thus, we conclude that the Financing Motion did not seek, and we did not decide by entry of the Financing Orders, that the Debtors had an interest in the Prudent Buyer Appeal Monies to which NCH lays claim.

Furthermore, even had NCH raised the issue of the validity of its equitable title or interest in the Prudent Buyer Appeal Mo-

---

**9.** There was no mention of the Prudent Buyer Appeal Monies at the Final Hearing on the Financing Motions. (*See* 3/20/01 Transcript.)

nies, it is unlikely we would have addressed it at the hearings on the Financing Motion. This is not the type of issue that is typically addressed in Financing Motions or Orders. At that early stage in a bankruptcy case, the Court is not usually asked to make a determination as to what assets the debtor actually owns, especially where there is a contest as to title. Further, it is unclear whether the hearing on a financing motion is the appropriate procedure for determination of a contested title issue. Financing motions are typically filed early in a case under emergency circumstances and done on an expedited basis. The debtor's need for cash requires this.

In contrast, the Federal Rules of Bankruptcy Procedure provide that any action to determine the extent, validity or priority of any interest in property must be commenced by adversary proceeding, not by motion as financing requests are. *See* Fed. R. Bankr.P. 7001. Therefore, it cannot be presumed, as the Defendants assert it was, that the Financing Orders in this case made (or could have made) a determination of the extent, validity or priority of the Debtors' or NCH's interest in the Prudent Buyer Appeal Monies.

The Defendants assert that it was incumbent on NCH to raise the issue of NCH's interest in the Prudent Buyer Appeal Monies because NCH knew that it claimed such an interest. However, the Debtors also knew of NCH's claim, since the Debtors were parties to the agreements by which that claim arose. Further, since it was the Debtors who (they now assert) were seeking a determination of their rights to the Prudent Buyer Appeal Monies vís-a-vís NCH's rights, it was a necessity of due process that the Debtors provide adequate notice to NCH of what they were asking the Court to decide. This the Debtors failed to do.

In *O'Brien,* the Third Circuit held that a creditor had not waived its right to establish its claim amount when it failed to object to an application filed by the debtor seeking to establish reserves for disputed claims. The Court explained:

> The title of the application did not call attention to the fact that it contained information critical to the [creditor's] interests. Thus, although three paragraphs of the Application addressed the assumed executory contracts, we conclude that the [debtor] did not provide sufficient notice to [creditor] that the Application was either an objection to [creditor's] claim or was seeking to determine [creditor's] claim once and for all. One would not normally assume that an "application" directed to the court seeking to "establish reserves" would be the vehicle by which the debtor would be seeking, as it said it would in the Plan, to have the court resolve a dispute relating to a claim.

*Id.* at 129.

Similarly, in this case, the notice of the Financing Motion (and even the Motion itself) did not apprise NCH of the Debtors' intent to deprive it of all its right, title and interest to the Prudent Buyer Appeal Monies. This case is even more striking than the *O'Brien* case because here the Motion itself does not state that the Debtors are seeking to deny NCH its interests in the funds while in *O'Brien* the application did contain such language, although it was buried and not reasonably calculated to advise the creditor of the relief requested. *Id.*

It is a fundamental concept of American jurisprudence (not just bankruptcy law) that a person's property cannot be taken away from it absent notice that is "reasonably calculated, under all the circumstances, to apprise interested

parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652; 94 L.Ed. 865 (1950). *See also Bank of Marin v. England,* 385 U.S. 99, 102, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966).

Nothing contained in the pleadings filed by the Debtors in connection with their Financing Motion advised NCH that they were seeking a determination of what right, title and interest they or NCH had to the Prudent Buyer Appeal Monies. Nor is a Financing Motion typically where such issues are determined. Thus, we conclude that the issues raised by NCH in its complaint as to its alleged equitable title to the Prudent Buyer Appeal Monies are not "so close to a claim actually litigated in the [Financing Motion] that it would be unreasonable not to have brought them both at the same time." *Eastern Minerals,* 225 F.3d at 337–38. Thus, res judicata does not preclude NCH from prosecuting its claim that it has any right, title or interest to the Prudent Buyer Appeal Monies.

2. *The Financing Orders Did Not Prime NCH's Interests in the Prudent Buyer Appeal Monies*

 Nor did the Financing Motion seek to prime or avoid any security interest or other interest that NCH might have to the Prudent Buyer Appeal Monies. In this regard, the Financing Motion expressly stated:

Thus, while the MPAN Debtors seek to prime the liens of the Pre–Petition Secured Lenders and the Pre–Petition

Agents, they do not seek to prime the valid, perfected, non-voidable, first priority liens of any other secured creditors . . . .

(*See* Financing Motion at p. 4.) [10]

This was confirmed by counsel for the Debtors at the initial hearing on the Financing Motion:

Your Honor, once again I'd like to emphasize that none of what's being propósed by way either of debtor-in-possession financing or adequate protection would involve priming of the prepetition security interests of any third-party lenders. The only parties to be primed are the existing bank group and as we understand it they have no objection to that priming.

(1/19/01 Transcript at p. 117.)

This demonstrates that no priming of anyone's interest was being requested by the Debtors (other than the Pre–Petition Secured Lenders). Thus, the Financing Orders are not a final decision on the validity, extent or priority of any security or other interest that NCH may have in the Prudent Buyer Appeal Monies.

The Defendants argue, however, that the Notice of the Financing Motion put NCH on notice that its interest in the Prudent Buyer Appeal Monies was being affected. We disagree. The Notice states that the DIP Lenders and Pre–Petition Secured Lenders were being given "liens on substantially all of the assets of the estates." (*See* 1/21/01 Notice at ¶¶ 1 & 2.) However, the Notice also advised that those liens were intended to prime only the liens of the Pre–Petition Secured Lenders. (*Id.*)

10. The Local Rules specifically require that any financing motion which seeks to prime the liens or interests of another party highlight such a provision in the notice. *See* L.R. 4001(a)(i)(G). While those rules were not in effect at the time that this Financing Motion was filed, they reflect the concern of the Court that inclusion of provisions priming another's interest must be adequately noticed as a matter of due process.

The Debtors cite *In re Ellingsen Mac-Lean Oil Co.,* 98 B.R. 284, 291 (Bankr. W.D.Mich.1989) as support for their proposition that a financing order has res judicata effect on any issue of security interests in the Debtors' assets. In *Ellingsen Mac-Lean Oil,* the creditors' committee contested the bank's asserted security interest in proceeds of preference actions. The Court found that the financing order, which granted the bank a security interest in all property of the estate, gave the bank a security interest in preference action proceeds as well.

However, that case is clearly distinguishable. Here, to the extent that any security interest was granted in the Prudent Buyer Appeal Monies, it was specifically *not* given priority over any existing liens. NCH asserts it had a lien on those funds as of the date the petition was filed and the Financing Orders were entered.

In the absence of any request that its lien be primed, NCH had no reason to appear and assert its security interest at the time the Financing Motion was heard. It simply was not an issue being raised by the Financing Motion. Nor is it usual to have any determination made of the extent, validity, and priority of any liens against assets of the debtor's estate in financing orders, especially in interim orders. As the Local Rules now make clear, the Court rarely makes any findings of fact at the interim hearings on financing motions even on the extent, validity or priority of the pre-petition lenders' security interests in the debtor's assets. *See* L.R. 4001(b).

Thus, we conclude that the issues raised by NCH in its complaint as to its alleged security interest in the Prudent Buyer Appeal Monies are not "so close to a claim actually litigated in the [Financing Motion] that it would be unreasonable not to have brought them both at the same time."

*Eastern Minerals,* 225 F.3d at 337. Therefore, res judicata does not preclude the prosecution of that claim in the NCH complaint.

3. *The Financing Orders Did Not Transfer Title of the Prudent Buyer Appeal Monies to the Pre–Petition Secured Lenders Free and Clear of All Liens*

The Defendants assert, however, that the Financing Orders constituted a conveyance of the Prudent Buyer Appeal Monies to the Pre–Petition Secured Lenders. They assert that this case is analogous to instances where courts have given res judicata effect to sales orders, because "in effect, [the Pre–Petition Secured Lenders] purchased the Prudent Buyer Appeal Monies pursuant to Court Order." *See* Debtors' Memorandum of Points and Authorities filed Nov. 9, 2000, at p. 31, *citing La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 908 (7th Cir. 1990); *Gekas v. Pipin (In re Met–L–Wood Corp.),* 861 F.2d 1012, 1017 (7th Cir.1988); *Southmark Properties v. Charles House Corp.,* 742 F.2d 862, 872 (5th Cir.1984). *See also* Debtors' Reply Memorandum at 15, *citing Veltman v. Whetzal,* 93 F.3d 517 (8th Cir.1996).

These cases are clearly distinguishable, however, because they involved motions for sale of assets that were properly noticed and prosecuted under section 363 of the Bankruptcy Code. In contrast, in this case the purported sale occurred in the context of a Financing Motion that did not state that the Prudent Buyer Appeal Monies were being sold, let alone that the sale was free and clear of all other parties' liens, claims or interests. Nor were there any findings by the Court at the time the Financing Orders were entered that the sale of the Prudent Buyer Appeal Monies met the standards of section 363 which

governs sales in bankruptcy. *See* 11 U.S.C. § 363(f).

If the Financing Orders contemplated a sale under section 363, the notice was woefully inadequate. Typically, notices of sales of assets of the estate are given not only to those who may assert an interest in those assets but also to all who may be interested in purchasing those assets—to assure that the price being paid for the assets is fair and reasonable. In fact, sale notices are typically the subject of a separate motion to assure that the sale procedures fully comport with due process and are designed to assure a fair process that results in the highest recovery for the estate. None of those procedures were followed in this case. The notice given in this case stated only that the Debtors were seeking post-petition credit and use of cash collateral.

Furthermore, the suggestion that the Prudent Buyer Appeal Monies were sold to the Pre–Petition Secured Lenders by virtue of paragraph 14 of the Financing Orders is simply not supportable. Nowhere in that paragraph is the typical conveyance language of section 363 orders: that the assets are being transferred or sold to the Pre–Petition Secured Lenders free and clear of all liens, claims or interests of any third party. Rather, the Financing Orders are read more logically to provide only that the Debtors' interest (whatever it may be) in the Prudent Buyer Appeal Monies is being transferred to the Pre–Petition Secured Lenders.

Therefore, we conclude that the Financing Orders did not transfer title to the Prudent Buyer Appeal Monies to the Pre–Petition Secured Lenders. Nor could NCH be expected to anticipate that the Financing Motion (which gave no notice that a sale under section 363 was sought)

was the proper forum to object to a conveyance of those funds free of its interests. Therefore, NCH was not obligated to litigate its interests in the Prudent Buyer Appeal Monies in the context of approval of the Financing Orders.

### 4. *The Financing Orders Did Not Transfer Property that Was Not Property of the Estate*

NCH argues that, even if the Financing Orders purported to sell the Prudent Buyer Appeal Monies to the Pre–Petition Secured Lenders, the Debtors could not have conveyed those in which NCH claims an interest.[11] NCH argues that, because the Prudent Buyer Appeal Monies at issue are held in constructive trust for it, they are not property of the estate and cannot be sold by it.

Section 541(d) of the Bankruptcy Code provides:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).

Property held by a debtor in constructive trust for another cannot be used by the debtor to pay its creditors. *See, e.g., Universal Bonding Ins. Co. v. Gittens & Sprinkle Enterprises, Inc.*, 960 F.2d 366, 372 (3d Cir.1992) (bankruptcy law does not allow trustee to distribute other people's property to estate's creditors); *In re N.S. Garrott & Sons*, 772 F.2d 462, 467 (8th

---

11. Apparently the Prudent Buyer Appeal Monies in which NCH claims an interest are only some of the Debtors' disallowed Medicare reimbursements that are on appeal.

Cir.1985) (after concluding that the debtors held funds in constructive trust, the Eighth Circuit held that the Bankruptcy Court had power only to order turnover of funds remaining after the equitable owner had been paid).

In *Rutherford Hosp., Inc. v. RNH Partnership*, 168 F.3d 693 (4th Cir.1999), the Court dealt with the application of res judicata to an order that purported to sell property that the Debtor did not own. The Court held:

> [W]hile it is of course true that a bankruptcy court's order of confirmation [of a sale] "is treated as a final judgment with res judicata effect," ... a bankruptcy court's jurisdiction does not extend to property that is not part of a debtor's estate. *See, e.g., In re Signal Hill–Liberia Ave. Ltd. Partnership*, 189 B.R. 648, 652 (Bkrtcy.E.D.Va.1995) (citing cases); *In re Murchison*, 54 B.R. 721, 727 (Bkrtcy.N.D.Tex.1985) (citing cases).

*Id.* at 699. In *Rutherford*, the plaintiff had bought two leases and a certificate of need for a nursing home facility from the debtor at a bankruptcy auction. *Id.* at 696. Subsequently, it was learned that the debtor did not have a certificate of need for that facility and that, in fact, only the owner/lessor of the facility could apply for a certificate of need. *Id.* at 697. The plaintiff sought a declaratory judgment that it owned the certificate of need for the facility, arguing that the lessor who had been a party to the order assuming and assigning the leases and certificate of need was bound by that order. *Id.* The Fourth Circuit disagreed, concluding that even though the lessor had notice of the bankruptcy court order, and had participated in the sale hearing, the order was not valid as a conveyance of the certificate of need, since the debtor did not in fact have one to convey. *Id.* at 699.

The Third Circuit's decision in *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252 (3d Cir.2000) is also instructive. In *Folger Adam*, the Court was asked to decide if an order of the Bankruptcy Court authorizing the sale of accounts receivable free and clear of all liens, claims and interests resulted in the transfer of the accounts receivable free of any defense of setoff or recoupment that the account debtor might have. *Id.* at 253–54. The Court concluded, with respect to the defense of setoff, that "To the extent that DeMatteis is able to prove an actual setoff prior to bankruptcy, the property subject to setoff is not deemed part of the bankruptcy estate and therefore is not subject to the section 363 sale." *Id.* at 263.

Thus, even if the Financing Order conveyed the Prudent Buyer Appeal Monies to the Pre–Petition Secured Lenders, it did so only to the extent that they constituted property of the estate.

It is this characteristic of NCH's complaint that distinguishes it from the cases cited by the Defendants. In *Spartan Mills*, for example, the creditor was asserting that it had a prior security interest in assets of the debtor, notwithstanding an order entered by the Bankruptcy Court holding that another had a first priority security interest in those assets. 112 F.3d at 1253. There was no allegation in that case that the debtor did not own those assets or that they were held in constructive trust. *Id.* Rather, it was clear in that case that the creditor was seeking to attack a decision that the Bankruptcy Court had actually made as who had a first priority lien in the debtor's assets. *Id.*

In contrast, in this case no determination was made at the time the Financing Orders were entered as to who owned or had prior liens (constructive or actual) on the Prudent Buyer Appeal Monies. The

Debtors did not ask for such determination in the Financing Motion or at the hearing on that Motion.

The Defendants dispute the assertion that we did not have jurisdiction to enter the Financing Orders and convey the Prudent Buyer Appeal Monies to the Pre–Petition Secured Lenders. They cite to numerous cases which confirm that a bankruptcy court has jurisdiction to decide whether the debtor has an ownership interest in property of the estate. *See, e.g., Canal Corp. v. Finnman (In re Johnson ),* 960 F.2d 396, 402 (4th Cir.1992) (bankruptcy court is only proper forum for determining whether assets held by debtor are held in constructive trust for another); *PBGC v. Continental Airlines (In re Continental Airlines ),* 138 B.R. 442, 445 (D.Del.1992) (bankruptcy court's authority to determine what is property of the estate is clear); *In re Carla Charcoal, Inc.,* 14 B.R. 644, 645 (Bankr.W.D.La.1981) (bankruptcy court has jurisdiction to determine all matters relating to property in which debtor claims an interest).

However, the issue is not whether we could have determined, as between the Debtors and NCH, who owned the Prudent Buyer Appeal Monies. That issue was never raised by the Financing Motion and Orders as discussed above. Rather, the issue is whether we could have (and did) transfer property in which the Debt-

ors had no equitable interest to another. The answer to the latter is no.[12]

### B. *Administrative Claim*

The Defendants also seek a dismissal of the NCH complaint to the extent that it seeks administrative claim status for its claims. They assert that the complaint itself asserts that the services provided by NCH were performed pre-petition pursuant to a pre-petition contract.

■ The Third Circuit in *Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.),* 181 F.3d 527, 532–33 (3d Cir.1999) stated:

> For a claim in its entirety to be entitled to first priority under § 503(b)(1)(A), the debt must arise from a transaction with the debtor-in-possession ... and the consideration supporting the claimant's right to payment must be beneficial to the debtor-in-possession in the operation of the business.

*Id.* at 532–33. Based on the allegations of the NCH complaint, it is clear that its claim for the Prudent Buyer Appeal Monies does not arise from a post-petition contract.

■ However, NCH's claim may be recoverable as an administrative claim under section 503(b)(3)(D) of the Code. To the extent that NCH's prosecution of the appeal results in a recovery of the disallowed reimbursements for the estate[13]

---

**12.** NCH also asserts that we have the inherent power, now codified in Rule 60 of the Federal Rules of Civil Procedure, incorporated by Rule 9024 of the Federal Rules of Bankruptcy Procedure; to modify the Financing Orders. *See, e.g., Burton v. Johnson,* 975 F.2d 690, 694 (10th Cir.1992) (court may "invoke Rule 60(a) to resolve an ambiguity in its original order to more clearly reflect its contemporaneous intent and ensure that the court's purpose is fully implemented"). We need not address this argument because we conclude that our Financing Orders are unambiguous and did

not decide the issue of NCH's right, title, or interest in the Prudent Buyer Appeal Monies.

**13.** This clearly applies to the Prudent Buyer Appeal Monies that are included in the appeal being prosecuted by NCH for the Debtors in which NCH does not claim a constructive trust. In addition, to the extent NCH loses in this adversary and is not determined to have a constructive trust on any of the Prudent Buyer Appeal Monies, it might nonetheless still have an administrative claim for making a substantial contribution to the estate if it is

that would confer a benefit on the estate. Section 503 allows as an administrative claim

> (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by –
>
> (D) a creditor ... in making a substantial contribution in a case under chapter ... 11 of this title.

11 U.S.C. § 503(b)(3)(D).

Further, to the extent NCH is entitled to a substantial contribution claim, its attorneys' fees related to that claim would also be entitled to administrative claim status under section 503(b)(4) which accords administrative claim status to:

> (4) reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph 3 of this subsection, based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title, and reimbursement for actual, necessary expenses incurred by such attorney or accountant.

11 U.S.C. § 503(b)(4).

The Defendants assert that, since the appeals are being prosecuted in the name of the Debtors, counsel for NCH is in fact counsel for the Debtors. They assert, therefore, that in order to be compensated, counsel must comply with the requirements of sections 327 and 330 and be retained by the Debtors before they can be compensated. They cite to case law holding that counsel for the debtor cannot circumvent the requirements of sections 327 and 330 by making what is essentially a quantum meruit argument under section 503. *See, e.g., F/S Airlease II, v. Simon,* 844 F.2d 99, 108–09 (3d Cir.1988); *In re Peterson,* 163 B.R. 665, 675 n. 11 (Bankr. D.Conn.1994); *In re Office Prod. of America, Inc.,* 136 B.R. 675, 689 (Bankr. W.D.Tex.1992); *In re Southern Diversified Properties, Inc.,* 110 B.R. 992, 995–96 (Bankr.N.D.Ga.1990).

However, this case is distinguishable from the cases cited by the Defendants. In those cases, the attorney was acting as counsel for the debtors and at the direction of the debtors. In this case, while the appeals are being prosecuted in the name of the Debtors, it is NCH who is prosecuting them and the attorney is NCH's, not the Debtors'. Under the contract between the Debtors and NCH, NCH has the right to prosecute the appeals in the name of the Debtors and has the right to direct all aspects of the prosecution of the appeal. Thus, we conclude that this is not a case where a professional is seeking to circumvent the requirements of the Code.[14]

Thus, we cannot conclude as this early stage that NCH would not be entitled to an administrative claim. The Defendants' Motions to dismiss the complaint on this ground are also denied.

## IV. CONCLUSION

For the reasons set forth herein, the Defendants' Motions to Dismiss the NCH complaint are denied.

---

successful in collecting the Prudent Buyer Appeal Monies for the estate.

**14.** It is significant to note also that under section 503(b)(4) the Court retains the right to review the attorneys' fees requested for reasonableness. Further, no attorneys' fees are recoverable until and unless the creditor has first established that it has made a substantial contribution to the estate.