In re EXDS, INC. (f/k/a Exodus Communications, Inc.), et al., Debtors.

EXDS, Inc. (f/k/a Exodus Communications, Inc.), Plaintiff,

v.

Ernst & Young LLP, Defendant.

Bankruptcy No. 01–10539 (PJW). Adversary No. 03–56183(PJW).

United States Bankruptcy Court, D. Delaware.

Nov. 19, 2004.

William P. Bowden, Ashby & Geddes, Wilmington, DE, Peter A. Wald, James K. Lynch, Latham & Watkins LLP, San

Francisco, CA, for Defendant Ernst & Young LLP.

Joanne P. Pinckney, John M. Seaman, Bouchard, Margules & Friedlander, Wilmington, DE, Richard F. Levy, Richard T. Franch, Brian H. Meldrum, Lee J. Strang, Jenner & Block, LLC, Chicago, IL, for Plaintiffs/Debtors EXDS, Inc. (f/k/a Exodus Communications, Inc.) and the EXDS Plan Administrator.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

Before the Court is Ernst & Young LLP's ("E & Y") motion (Doc. # 11) to dismiss the complaint of EXDS, Inc. (f/k/a Exodus Communications, Inc.) ("EXDS") and enforce alternative dispute resolution. For the reasons set forth below, I will deny E & Y's motion to dismiss but will enforce alternative dispute resolution ("ADR") with respect to five counts and stay proceedings with respect to one count.

## BACKGROUND

On September 26, 2001, EXDS filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").[1] On June 5, 2002, its Second Amended Joint Plan of Reorganization (the "Plan") was confirmed.

The instant matter arises out of a dispute between EXDS and E & Y over certain actions taken by the parties during EXDS's pre-petition business operations. In the spring of 2000, EXDS hired Devcon Construction, Inc. ("Devcon") to build and equip several buildings as internet data centers. In connection with the construction of these data centers, EXDS retained E & Y to perform project management oversight. (Doc. # 15 at 2.) E & Y was obligated to review and verify all Devcon bills submitted to EXDS. Shortly after the Plan was confirmed, EXDS hired Navigant Consulting, Inc. ("Navigant") "to audit the billing practices of [certain] construction contracting firms." (Doc. # 15 at 4.) According to the Navigant audit, Devcon allegedly improperly billed EXDS for over $32,000,000. As a result, EXDS filed an adversary complaint against Devcon and filed a separate adversary complaint against E & Y. The EXDS complaint against E & Y includes six causes of action. Claims I–V essentially allege malpractice. Specifically, they allege negligence, negligent misrepresentation, breach of contract, breach of fiduciary duty, and unjust enrichment ("Claims I–V"). Pursuant to § 548(a)(1), Claim VI seeks avoidance of an alleged fraudulent transfer ("Claim VI").[2]

1. Particular sections of the Bankruptcy Code will be cited herein as "§ ____."

2. Section 548(a)(1) provides:

The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted, or

(B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

In its motion E & Y argues that Claims I–V are barred by either res judicata or judicial estoppel because those causes of action were neither raised during the bankruptcy case nor identified in the Plan. E & Y also argues that Claim VI should be sent to ADR as required by the parties' engagement agreements.[3] Finally, in the event that Claims I–V are not barred by res judicata or judicial estoppel, E & Y requests that Claims I–V be sent to ADR along with Claim VI.

In pleadings filed in response to the motion EXDS now agrees that Claims I–V are non-core proceedings and are subject to ADR. However, there is still considerable disagreement between the parties as to the correct procedural route to take; including, whether I am required to rule on the issues of res judicata and judicial estoppel and whether an arbitrator should determine the arbitrability of Claim VI.

Therefore, the issues presented in the instant matter are (a) whether Claims I–V are barred by res judicata or judicial estoppel and (b) whether this Court is the proper forum to hear Claim VI.

## DISCUSSION

A motion to dismiss must be denied "unless it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In ruling on a motion to dismiss, "[I] accept the allegations of the complaint as true and draw all reasonable factual inferences in favor of the [nonmov-

ing party]." *Weston v. Pennsylvania,* 251 F.3d 420, 425 (3d Cir.2001).

## A. Res Judicata and Judicial Estoppel as a bar to Claims I–V

### *Res Judicata*

■ Although the parties disagree whether this Court is the correct forum to decide the res judicata issues, I believe Third Circuit law is clear that I should so decide. In the context of a pending arbitration situation similar to that here, the Third Circuit has ruled that a district court should decide the res judicata defense as it relates to that court's prior judgment. *John Hancock Mut. Life Ins. Co. v. Olick,* 151 F.3d 132, 138 (3d Cir. 1998). Therefore, before sending Claims I–V to ADR it is appropriate for this Court to determine whether this Court's Plan confirmation order bars those claims at the threshold.

■ The doctrine of res judicata (or claim preclusion) precludes a party from relitigating claims that were or could have been asserted in a prior action. For the doctrine of res judicata to apply, three factors must be present: (1) a final judgment on the merits in a prior action involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action. *E.g., CoreStates Bank, N.A. v. Huls America, Inc.,* 176 F.3d 187, 194 (3d Cir.1999); *In re Mariner Post–Acute Network, Inc.,* 267 B.R. 46, 52 (Bankr.D.Del.2001). The application of this doctrine becomes more complex in the context of a chapter 11 case. The scope of a debtor's fresh start and any corresponding limitations will only be determined by

---

**3.** The engagement agreements state in relevant part: "Any controversy or claim arising out of or relating to this agreement of the services provided by E & Y (including any such matter involving any parent, subsidiary, affiliate, successor in interest, or agency of

Exodus or Ernst & Young) shall be submitted first to voluntary mediation, and if mediation is not successful, then to binding arbitration .... Judgment on any arbitration award may be entered in any court having proper jurisdiction." (Doc. # 13, Ex. A, B.)

the peculiarities of the specific case and the bargained for exchange between the debtor and its creditors. The depth and breadth of a bankruptcy proceeding confounds the res judicata analysis. *See id.* at 53.

■ In the context of bankruptcy, most courts find that a confirmation order constitutes a final judgment on the merits with respect to the issues addressed in the plan of reorganization. *See, e.g., Eastern Minerals & Chems. Co. v. Mahan,* 225 F.3d 330, 336, n. 11 (3d Cir.2000); *Donaldson v. Bernstein,* 104 F.3d 547, 554 (3d Cir.1997); *In re Varat Enters., Inc.,* 81 F.3d 1310, 1315 (4th Cir.1996); *In re Heritage Hotel P'ship I,* 160 B.R. 374, 377 (9th Cir. BAP 1993). In addition, "[a] party for the purposes of former adjudication includes one who participates in a Chapter 11 plan confirmation proceeding." *In re Varat Enters.,* 81 F.3d at 1316 n. 6; *see also CoreStates,* 176 F.3d at 195 ("We believe ... that claim preclusion should apply regardless of the jurisdictional basis of the present claim and between all parties to a bankruptcy case.") With respect to whether a subsequent claim is based on a cause of action that was or could have been addressed in a prior proceeding, relevant case law suggests that courts in the Third Circuit consider whether there is an "essential similarity of the underlying events" giving rise to the claims. *Eastern Minerals,* 225 F.3d at 337 (citing *United States v. Athlone Indus., Inc.,* 746 F.2d 977, 984 (3d Cir.1984)); *CoreStates,* 176 F.3d at 200. However, in *Eastern Minerals,* the Third Circuit recognized that "the 'essential similarity' test, when literally construed, is ideally suited for litigation that has been generated by discrete events" and not for litigation arising in the context of a bankruptcy case. *Eastern Minerals,* 225 F.3d at 337. In finding that the doctrine of res judicata did not bar a creditor's alter ego claim, the Third Circuit stated:

> Claim preclusion doctrine must be properly tailored to the unique circumstances that arise when the previous litigation took place in the context of a bankruptcy case. Difficult as it may be to define the contours of a cause of action in a bankruptcy setting, we conclude that a claim should not be barred unless the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum.

*Id.* at 337–38; *accord In re Mariner,* 267 B.R. at 53–54.

■ In the instant action, I find that res judicata does not bar Claims I–V. Although the Plan confirmation order was a final judgment on the merits, and both E & Y and EXDS were involved in the reorganization case, I do not believe that the counts in the adversary complaint state causes of action that were addressed in the confirmation process.

Based on the Third Circuit's decision in *Eastern Minerals,* the factual underpinnings, theory of the case, and relief sought in this action are not so close to the issues resolved in the bankruptcy case that it is unreasonable for EXDS not to have brought Claims I–V in the confirmation process. First, EXDS contends that it did not become aware of the Devcon overbilling until approximately one year after the Plan was confirmed. (Doc. # 15 at 1.) Because I must assume this to be true, EXDS was not privy to the relevant "factual underpinnings" while the bankruptcy was in progress. *See Haefner v. North Cornwall Township,* 40 Fed.Appx. 656, 658 (3d Cir.2002) (stating that claim preclusion will not apply where evidence "was either

fraudulently concealed," or "could not have been discovered with due diligence"). Furthermore, the "theory of the case" involved in the reorganization concerned E & Y's proof of claim for services performed (Doc. # 15 at 4). Here, Claims I–V include actions for negligence, negligent misrepresentation, breach of fiduciary duty, breach of contract, and unjust enrichment. Finally, EXDS's current "relief sought" is a demand for compensation as a result of E & Y's alleged malpractice, a markedly different relief than what was provided by the confirmation's fresh start. *See In re USN Communications, Inc.,* 280 B.R. 573 (Bankr.D.Del.2002); *In re Ampace Corp.,* 279 B.R. 145 (Bankr.D.Del.2002).

██ Moreover, even if, as E & Y contends, this adversary proceeding is somehow a cause of action that could be deemed to have been addressed in the confirmation process, most courts hold that where a disclosure statement and/or plan of reorganization expressly reserves an action for later adjudication, res judicata does not apply. *See, e.g., D & K Prop. Crystal Lake v. Mutual Life Ins. Co. of New York,* 112 F.3d 257, 259–60 (7th Cir.1997); *Kelley v. South Bay Bank,* 199 B.R. 698, 704 (9th Cir. BAP 1996) ("If a confirmed plan expressly reserves the right to litigate a specific cause of action after confirmation, then res judicata does not apply."); *In re Am. Preferred Prescription, Inc.,* 266 B.R. 273, 277 (E.D.N.Y.2000) ("The case law, however, recognizes an exception to the res judicata bar where the debtor has reserved the right to object to claims in a plan.").

And although the courts are divided over how specific the retention language must be, this Court has held that reservations similar to those contained in the EXDS Plan are sufficient to preserve causes of action for post-confirmation litigation. *See In re USN Communications,*

*Inc.,* 280 B.R. at 589–95; *In re Ampace Corp.,* 279 B.R. at 156–62; *In re Worldwide Direct, Inc.,* 280 B.R. 819, 823 (Bankr.D.Del.2002).

Multiple sections of the EXDS Plan preserve Claims I–V. Section 4.8(a) "Preservation of Rights of Action" provides:

Except as otherwise provided in the Plan, the Confirmation Order, or in any document, instrument, release or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtors and their Estates shall retain the Litigation Claims. Reorganized EXDS, may, subject to the ultimate supervisory authority of the Plan Committee as set forth in Section 4.10 of the Plan, enforce, sue on, settle or compromise (or decline to do any of the foregoing) any or all of the Litigation Claims. A schedule of Litigation Claims will be included in the Plan Supplement: *provided, however,* that the failure of the Debtors to list a claim, right of action, suit or proceeding in the Plan Supplement shall not constitute a waiver or release by the Debtors or their Estates of such claim, right of action, suit or proceeding.

\*   \*   \*   \*   \*   \*

1.60 *Litigation Claims* means the Claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Person, including but not limited to the Claims, rights of action, suits and proceedings listed in the Plan Supplement, to be retained by the Estates pursuant to Section 4.8 of the Plan, but not including (i) any claims, rights of action, suits or proceedings arising under or resulting from contractual subordination or section 510(b) of the Bankruptcy code or (ii) any claims under section 544, 545,

547, and 548 of the Bankruptcy code that may exist against C & W, CWIS or any of its affiliates.

\*     \*     \*     \*     \*     \*

**1.21** *Claim* means a "claim," as defined in section 101(5) of the Bankruptcy Code.

(Doc. # 14, Ex. A.)

The supplement to the EXDS Plan contains Exhibit A "List of Litigation Claims." This section states:

Litigation Claims (as defined in the Second Amended Joint Plan of Reorganization of EXDS, Inc. and its Debtor Affiliates (the "Plan")) include but are not limited to the following causes of action and claims, unless otherwise provided under the Plan:

\*     \*     \*     \*     \*     \*

(8) Causes of action against certain of the Debtors' customers, including customers listed on Schedule 3 hereto.

\*     \*     \*     \*     \*     \*

(13) Causes of action against certain of the Debtors' current or former professionals.

(Doc. # 14, Ex. C.)

The last sentence of Section 4.8(a) contains a specific negation against any overly preclusive res judicata effect. Section 4.8(a) provides that EXDS has the right to enforce any of the Litigation Claims, which are defined as "[c]laims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Person ...." And the supplement to the EXDS Plan specifically states that the Plan preserves causes of action against EXDS's current professionals, former professionals, and customers. E & Y is listed as a customer on the Plan's supplement—Schedule 3. (Doc. # 14, Ex. C.)

E & Y seems to argue that because it is listed on Schedule 3, EXDS may only sue E & Y in its capacity as a customer. However, E & Y cites no provision in the EXDS Plan which supports its contention. I find E & Y's suggested interpretation to be overly restrictive and must therefore disagree. At the very least, E & Y qualifies as a "current or former professional" and therefore should not be allowed to assert immunity from claims alleging malpractice simply because it was listed on a schedule of customers.

Finally, and perhaps most compellingly, it is the contention of EXDS, that it had no knowledge of the factual underpinnings which give rise to Claims I–V. To require a debtor to conjure up and list every imaginable cause of action would unduly complicate the reorganization process and would be unrealistic. Where fraud has been alleged and where the circumstances which give rise to a claim are not known until a full year after the Plan confirmation, I find that res judicata is inapplicable.

### *Judicial Estoppel*

■ E & Y has also argued that this Court should employ the doctrine of judicial estoppel to dismiss Claims I–V. For the following reasons I find that judicial estoppel would be inappropriate under these facts and will therefore deny E & Y's request.

■ "Judicial estoppel, sometimes called the doctrine against the assertion of inconsistent positions, is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding. It is not intended to eliminate all inconsistencies, however slight or inadvertent; rather, it is designed to prevent litigants from playing fast and loose with the courts." *In re Chambers Dev. Co., Inc.,* 148 F.3d 214, 229 (3d Cir.1998) (citation omitted).

"Asserting inconsistent positions does not trigger the application of judicial estoppel unless intentional self-contradiction is used as a means of obtaining unfair advantage. Thus, the doctrine of judicial estoppel does not apply when the prior position was taken because of a good faith mistake rather than as part of a scheme to mislead the court." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 362 (3d Cir.1996) (citations and internal quotations omitted). "An inconsistent argument sufficient to invoke judicial estoppel must be attributable to intentional wrongdoing." *Id.* In sum, "judicial estoppel is an extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice. It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts. Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to secure substantial equity." *Id.* at 365 (citations and internal quotations omitted).

E & Y argues that EXDS failed to disclose Claims I–V during its reorganization and therefore should be estopped from asserting those claims here. E & Y argues that EXDS is playing "fast and loose" with this Court (Doc. #12 at 14) and contends that Claims I–V assert a contrary position that would confer an unfair advantage.

In support of its argument E & Y cites *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.1988) and *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314 (3d Cir.2003) as examples of when the Third Circuit has estopped a former debtor from pursuing litigation claims that it failed to identify in a prior bankruptcy case. In *Oneida*, the postconfirmation debtor was judicially estopped from asserting breach of contract and fraudulent misrepresentation claims against a creditor bank. *Oneida*, 848 F.2d at 415. In *Krystal*, the debtor/franchisee was estopped from pursuing claims against its franchisor where the debtor failed to include those claims in its disclosure statement. *Krystal*, 337 F.3d at 316. However, both those cases are readily distinguishable from the facts before me. In both *Oneida* and *Krystal*, the debtors failed to timely raise claims even when they were aware of the pertinent facts and even after they had knowledge of their potential causes of action. In the instant proceeding, EXDS explicitly denies that it had any knowledge of either the alleged Devcon improper billing or the alleged E & Y malpractice.

The facts of this action are more similar to the facts of another Third Circuit decision—*Ryan Operations*. In *Ryan Operations*, the debtor failed to inform the bankruptcy court of a state law proceeding that was pending while the debtor was in bankruptcy. The *Ryan Operations* court declined to employ judicial estoppel where there was no evidence of bad faith and stated "that policy considerations militate against adopting a rule that the requisite intent for judicial estoppel can be inferred from the mere fact of nondisclosure in a bankruptcy proceeding." *Ryan Operations*, 81 F.3d at 362, 364.

I have found no indication that EXDS is trying to manipulate this Court, that EXDS brought Claims I–V in bad faith, or that EXDS deliberately withheld disclosure of Claims I–V. I therefore find that judicial estoppel has no application here.

By denying E & Y's requests to employ judicial estoppel and res judicata, I of course express no opinion as to the merits of Claims I–V. Those actions must be decided within the confines of the parties'

contractually agreed upon ADR. At this stage I simply hold that neither res judicata or judicial estoppel bars Claims I–V at the threshold.

## B. Disposition of Claim VI

Claim VI is premised on a trustee's avoidance power under § 548(a)(1). The Third Circuit has held that with respect to non-core proceedings a bankruptcy court has no authority to deny enforcement of a debtor's pre-petition contractually agreed upon arbitration clause. *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 885 F.2d 1149, 1155–1157 (3d Cir.1989). However, the *Hays* court held that a trustee could not be compelled to arbitrate a § 544(b)[4] claim because "[c]laims asserted by the trustee under section 544(b) are ... creditor claims that the Code authorizes the trustee to assert on their behalf." *Id.* at 1155. The *Hays* court rested its decision on the distinction between a trustee's claim which was not derivative of the bankrupt—the § 544(b) claim—and those which were derivative of the bankrupt—in that case, the debtor's pre-petition claims for state and federal securities law violations. Since EXDS's § 548(a)(1) cause of action, like § 544(b), is Bankruptcy Code created (i.e., not deviative of the bankrupt) I cannot require EXDS to submit Claim VI to binding arbitration.[5]

Nevertheless, I adopt the position taken by the court in *In re Hagerstown Fiber Ltd. P'ship*, 277 B.R. 181 (Bankr. S.D.N.Y.2002) where, on similar facts, the court stayed a fraudulent transfer claim.

In *Hagerstown*, the court addressed the disposition of a fraudulent transfer claim in the context of directing arbitration of breach of contract disputes arising out of the same transaction. In granting the stay the court found that "the arbitration may contribute to the resolution of the issues raised by the fraudulent conveyance claims". *Hagerstown*, 277 B.R. at 208. Likewise here, the factual underpinnings of Claim VI are essentially those underlying Claims I–V. Consequently, I find the appropriate course of action to be a stay of prosecution of Claim VI pending completion of the ADR.

## CONCLUSION

For the foregoing reasons, an order will be entered denying E & Y's motion to dismiss, enforcing the ADR as to Claims I–V and staying proceedings here with respect to Claim VI.

## ORDER

For the reasons set forth in the Court's Memorandum Opinion of this date, Ernst and Young LLP's motion (Doc. # 11) to dismiss the complaint of EXDS, Inc. (f/k/a Exodus Communication, Inc.) and enforce alternative dispute resolution is (a) denied with respect to dismissal, (b) granted with respect to the enforcement of alternative dispute resolution as to Claims I–V of the complaint, and (c) Claim VI of the complaint is stayed pending completion of the arbitration dispute resolution process.

---

4. Section 544(b)(1) provides:

    Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that

    is not allowable only under section 502(e) of this title.

5. Presumably, a state law based fraudulent conveyance action would be derivative of the bankrupt and therefore subject to an appropriate arbitration provision.