In re Freddy Victor GARRIDO JIMÉNEZ, Debtor(s).

Wilfredo Segarra–Miranda, as Chapter 7 Trustee for the Estate of Freddy Víctor Garrido Jiménez, Plaintiff(s),

v.

RD Capital Group, Inc.; Ramon Dominguez; Jorge Blum; ABC Insurance; DEF Insurance Corp.,

v.

Freddy v. Garrido Jiménez; U.S. Trustee, Defendants(s).

Civil No. 08–1663 (DRD).

United States District Court, D. Puerto Rico.

March 29, 2011.

Eldia M. Diaz Olmo, Eldia M. Diaz Olmo Law Office, San Juan, PR, for Plaintiff.

Antonio N. Fiol Matta, Antonio Fiol Matta Law Offices, San Juan, PR, for RD Capital Group, Inc.; Ramon Dominguez; Jorge Blum; ABC Insurance; DEF Insurance Corp.

Monsita Lecaroz Arribas, U.S. Trustee Office, San Juan, PR, for Defendants.

**OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION**

DANIEL R. DOMINGUEZ, District Judge.

Pending before the Court is a *Transmittal of Opinion, Report and Recommenda-*

*tion* from the Clerk of the United States Bankruptcy Court for the District of Puerto Rico, of the *Opinion, Report and Recommendation* entered by the Hon. Enrique S. Lamoutte, U.S. Bankruptcy Judge, in the Adversary Proceeding No. 06–0236 (ESL), Bankruptcy Case No. 05–2111 (ESL), on May 28, 2008. This matter was referred to the undersigned on June 17, 2008, under Civil No. 08–1663 (DRD), for review of the *Opinion, Report and Recommendation* issued by the bankruptcy judge and for the entering of a final order and judgment. For the reasons set forth below, the *Opinion, Report and Recommendation*, issued by the Hon. Enrique S. Lamoutte in Adv.Proc. No. 06–236 (ESL), Docket No. 46, is approved and adopted *in toto*.

### Jurisdiction

This Court has jurisdiction to entertain the certification referred from the bankruptcy court under 28 U.S.C. §§ 157(c)(1), and 158(a).

### Introduction

Mr. Wilfredo Segarra, the appointed Chapter 7 Trustee in the related bankruptcy proceeding, Bankruptcy No. 05–2111 (ESL) (hereinafter the "Trustee"), filed an adversary proceeding against defendants RD Capital Group, Inc. ("RD Capital"), and Messrs. Ramón Domínguez and Jorge Blum (hereinafter "Domínguez" and "Blum" or collectively the "defendants"),[1] "to recover damages suffered as a result of the defendants' acts in conspiring with the Debtor [Freddy Víctor Garrido Jiménez] to hinder, delay and defraud his creditors,[2] as well as to recover for the decline in value of the accounts, ill-gotten gains in commissions, interest and other benefits as a result of overtrading and sale of securities on margin." *See Opinion, Report and Recommendation*, Adv. Proc. No. 06–236 (ESL), Docket No. 46, page 2. The Trustee, plaintiff herein, alleged in the complaint a breach of fiduciary duties under applicable Puerto Rico law, to wit, 31 L.P.R.A. §§ 3018 and 5141, as well as violations to the Securities Exchange Act of 1934, 15 U.S.C. § 78, *et seq.;* the Securities and Exchange Commission Rule 10b–5, and unjust enrichment. *See Opinion, Report and Recommendation*, Adv. Proc. No. 06–236 (ESL), Docket No. 46, pages 2–3.

The Trustee moved the Court to find that the arbitration agreement signed by Virgilio Garrido Jiménez[3] cannot be enforced against Freddy Garrido, as the latter never signed the papers to open the investment accounts with RD Capital. The bankruptcy court concluded that "the

---

1. The Court clarifies that co-defendant Mr. Ramón Domínguez is not related in any way to the undersigned Judge.

2. The Court finds necessary to include FN.1 of the *Opinion, Report and Recommendation*. In February 2006 the Debtor, Mr. Freddy Víctor Garrido Jiménez plead guilty to count one of the indictment in CRIM. NO. 06–322 (DRD). The count states that "[f]rom on or about March 9, 2005, to on or about March 16,2006, in the District of Puerto Rico and elsewhere and within the jurisdiction of this Court, Freddy Victor Garrido–Jiménez, the defendant herein, knowingly and fraudulently concealed property of the estate of the defendant from the bankruptcy trustee, creditors and the Unites States Trustee in connection with a case under Title 11, namely, In re Freddy Victor Garrido–Jiménez, No. 05–2111, in the United States Bankruptcy Court, District of Puerto Rico. Specifically, the defendant knowingly and fraudulently concealed at least the following properties: ... (d) an amount of at least $204,852.90." *See Opinion, Report and Recommendation*, Adv. Proc. No. 06–236 (ESL), Docket No. 46, page 2, n.1.

3. Virgilio Garrido Jiménez (hereinafter "Virgilio Garrido" or "Virgilio") is the brother of Freddy Víctor Garrido Jiménez.

arbitration agreement is not valid against the trustee, as representative of the Debtor's estate, because the Debtor, owner of the funds used to open the accounts at RD Capital, did not sign the same. The [Bankruptcy] Court recommends to the U.S. District Court that this conclusion be adopted." *See Opinion, Report and Recommendation,* Adv. Proc. No. 06–236 (ESL), Docket No. 46, page 15.

### Standard of Review

Pursuant to the provisions of 28 U.S.C. § 157(c)(1), the district court will enter a final order and judgment after "considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."

█ When reviewing the bankruptcy judge's findings and conclusions of law, the district court will follow the standard for bankruptcy appeals, that is, the district court will review the findings of fact for clear error, and the objected legal conclusions will be reviewed *de novo,* as well as the bankruptcy court's "exercise of discretion for abuse thereof." *See Eastman v. Knight Adjustment Bureau, Inc.,* 2011 WL 382503, *1 (E.D.Pennsylvania, February 4, 2011), citing *In re Trans World Airlines, Inc.,* 145 F.3d 124, 131 (3d Cir.1998) (citing *In re Engel,* 124 F.3d 567, 571 (3d Cir. 1997)). *See also Marshall v. Stern,* 600 F.3d 1037, 1054–1055 (9th Cir.2010); *Yukon Energy Corporation v. Brandon Investments, Inc., et al.,* 138 F.3d 1254, 1259–1260 (8th Cir.1998); *Turner v. Universal Debt Solutions, Inc.,* 436 B.R. 153, 155–156 (Bankr.M.D. Alabama 2010). In sum, the district court will review a report and recommendation under the same standards as a bankruptcy appeal.

█ On bankruptcy appeals, the district court reviews rulings of law *de novo* and findings of fact for clear error. *Pre-*

*bor v. Collins (In re I Don't Trust)* 143 F.3d 1, 3 (1st Cir.1998); *Jeffrey v. Desmond,* 70 F.3d 183, 185 (1st Cir.1995). "Under an abuse of discretion standard, a reviewing court cannot reverse unless it has a 'definite and firm conviction that the court below committed a clear error of judgment' in the conclusion it reached upon a weighing of the relevant factors." *Taylor v. Hosseinpour–Esfahani,* 198 B.R. 574, 577 (9th Cir.1996), citing *Marchand v. Mercy Medical Ctr.,* 22 F.3d 933, 936 (9th Cir.1994). "Evidentiary rulings by the bankruptcy court are subject to the 'abuse of discretion' standard." *Williamson v. Busconi,* 87 F.3d 602, 603, n. 4 (1st Cir. 1996), citing *United States v. Cotto–Aponte,* 30 F.3d 4, 6 (1st Cir.1994). *See also General Electric Co. v. Joiner,* 522 U.S. 136, 141–142, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (referring to experts related evidentiary rulings); *Ruiz–Troche v. Pepsi Cola of Puerto Rico Bottling Co.,* 161 F.3d 77, 83 (1st Cir.1998) (evidentiary rulings are reviewed "for abuse of discretion"). "While this standard of review [for abuse of discretion] is 'not appellant friendly,'" *Ruiz–Troche,* 161 F.3d at 83, citing *Lussier v. Runyon,* 50 F.3d 1103, 1111 (1st Cir.1995).

"The standard of review on this appeal requires that we respect, unless 'clearly erroneous,' all findings of fact by the bankruptcy court, which includes any finding of actual reliance and any raw fact findings pertinent to the issue of justifiable reliance. *Brandt v. Repco Printers & Litographics [Lithographics], Inc.,* 132 F.3d 104, 107–08 (1st Cir.1997)." *In re Spadoni,* 316 F.3d 56, 58 (1st Cir.2003). "A court reviewing a decision of the bankruptcy court may not set aside findings of fact unless they are clearly erroneous, giving 'due regard ... to the opportunity of the bankruptcy court to judge the credibility of the witnesses.' (Citations omitted)."

*Palmacci v. Umpierrez,* 121 F.3d 781, 785 (1st Cir.1997).

"A finding of fact is clearly erroneous, although there is evidence to support it, when the reviewing court, after carefully examining all the evidence, is 'left with the definite and firm conviction that a mistake has been committed.'" *Palmacci,* 121 F.3d at 785, citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). "Deference to the bankruptcy court's factual findings is particularly appropriate on the intent issue '[b]ecause a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor.'" *Id.* citing *In re Burgess,* 955 F.2d 134, 137 (1st Cir.1992). "Particular deference is also due to the trial court's findings that depend on the credibility of other witnesses and on the weight to be accorded to such testimony." *Id.* citing Fed.R.Bank.R. 8013; *Keller v. United States,* 38 F.3d 16, 25 (1st Cir. 1994).

Moreover, when the parties do not contest the findings of fact made by the bankruptcy court, the appeals court will not disturb them. *In re Joelson,* 427 F.3d 700, 702 (1st Cir.2005) ("Because the parties do not specifically contest the bankruptcy court's findings of fact, the court will not disturb this ruling on appeal"), citing *Jenkins v. Hodes (In re Hodes),* 287 B.R. 561, 570 (D.Kan.2002), *aff'd,* 402 F.3d 1005 (10th Cir.2005).

In the instant case, the district court will only review the objected findings for clear error and review *de novo* the objected conclusions only. The Court now proceeds to review the facts following the path set by Judge Lamoutte's "excellent canvass of the issues," after a two day trial held on August 27–28, 2007. *See Eastman v. Knight Adjustment Bureau, Inc.,* 2011 WL 382503, *1.

## Issues

The issues before the Court are: (a) whether the issue of the enforceability of the arbitration agreement is a non core matter, which is a jurisdictional issue; and (b) whether the arbitration agreement is valid and enforceable against Freddy Garrido's estate and/or the Trustee.

## Factual and Procedural Background

The bankruptcy judge set forth the uncontested facts, as they were stipulated by the parties. *See Opinion, Report and Recommendation,* Adv. Proc. No. 06–236 (ESL), Docket No. 46, p. 3. The findings of fact are set forth in the *Opinion, Report and Recommendation,* Adv. Proc. No. 06–236 (ESL), Docket No. 46, pp. 3–10.

Notwithstanding, it is necessary to at least summarize some general facts. Freddy Garrido filed for voluntary relief under Chapter 13 of the Bankruptcy Code on March 9, 2005. The chapter 13 case was converted to a case under chapter 7, on August 8, 2005, Docket No. 32, Bankruptcy No. 05–2111 (ESL). The chapter 7 Trustee was duly appointed on August 9, 2005, Docket No. 33, Bankruptcy No. 05–2111 (ESL). On December 22, 2006, the Trustee filed a complaint under Adv. Proc. No. 06–236 (ESL), to recover damages from the defendants, including Freddy Garrido, for fraud to creditors, breach of fiduciary duties under Puerto Rico law, and violations under several statutory Securities laws provisions. The parties agreed that this matter be heard by the bankruptcy judge. After a two day trial, the bankruptcy judge filed the *Opinion, Report and Recommendation,* followed by a transmittal to the district court for the entering of a final order and judgment, pursuant to 28 U.S.C. § 157(c)(1). *See Opinion, Report and Recommendation,* Adv. Proc. No. 06–236 (ESL), Docket No. 46, p. 15.

The Court incorporates the following findings made by bankruptcy court, as they are relevant to the objections filed by the defendants:

Relevant to this case was a [lottery] prize for over $438,250 dollars that Debtor [Freddy Garrido] won in late 2004. In order to conceal the money, the prize was collected by Virgilio. In order to hide the prize, Debtor sought the brokerage services and advise of RD Capital. In January 2004, Debtor and RD Capital opened a brokerage account under Virgilio Garrido Jiménez' name, all the time knowing that the money belonged to Debtor (the "Account"). A New Account Form ("NAF") was signed by Virgilio when the account was opened. The NAF contains an arbitration agreement. The account was comprised of or included several ancillary agreements, such as a Margin Agreement ("MA") and an Option Agreement ("OA"), both of which also contained arbitration agreements. The NAF, MA and OA (collectively the "Account Agreement") each contained a clearly legible disclaimer in their respective signature lines, highlighting the existence of the arbitration agreement in each document. Debtor personally procured the account agreement forms, had them filled and signed by Virgilio, and returned them to RD Capital.

In December 2004, Virgilio complained that having the account in his name jeopardized his government health care benefits. As a result, Debtor closed the account and transferred the funds to another account opened with RD Capital in Catherine's name. **Just like Virgi-lio, all parties knew and understood that the funds in the new account also belonged to Debtor.** On this new account, Catherine also signed the documents containing the NAF, MA and OA. Debtor and Catherine signed a Full Trading Authorization Agreement ("FTAA") making Debtor an agent and attorney in fact for Catherine under the account with unrestricted powers and privileges to transact with Catherine's nominal account. The terms of the FTAA refer back to the "terms and conditions" of the Account Agreements. As was the case with Virgilio, Debtor took all the necessary steps to open the new account under Catherine's name. Catherine never saw or met with anyone at RD Capital. (Emphasis ours).

For clarification purposes only, the Court deems necessary to supplement the bankruptcy court's findings with Freddy Garrido's criminal background, as these findings are necessary to entertain the defendants' objections to the bankruptcy court's recommendation.

After the filing of Freddy Garrido's bankruptcy petition, a criminal indictment was filed against Freddy Garrido on October 11, 2006, under Criminal No. 06–322 (DRD), the case was assigned to the undersigned. The criminal indictment was triggered by Freddy Garrido's filing of his bankruptcy petition, for concealment of assets. It is a punishable federal crime to conceal assets in a bankruptcy petition, which has been filed under oath and under penalty of perjury. 18 U.S.C. § 152(1). The criminal indictment consisted of only one Count.[4] Freddy Garrido pled guilty to

4. *Count One:* Concealment of Assets.
From on or about March 9, 2005, to on or about March 16, 2006, in the District of Puerto Rico and elsewhere and within the jurisdiction of this Court, FREDDY VICTOR GARRIDO–JIMÉNEZ, the defendant herein, knowingly and fraudulently concealed property belonging to the estate of the defendant from the bankruptcy trustee, creditors, and the United States Trustee in connection with a case under Title 11, *United States Code,* namely, *In re Freddy Victor*

Count One, as charged, on February 26, 2007; he was sentenced by the undersigned on July 13, 2007, and *Judgment* was entered on July 16, 2007. *See* Criminal No. 06–322 (DRD), Docket No. 26 (Garrido's *Motion for Change of Plea*); Docket No. 31 (Minutes of February 26, 2007: Change of Plea Agreement); Docket No. 32 (*Plea Agreement of February 26, 2007*); Docket No. 45 (Minutes of July 13, 2007: *Sentencing Hearing*); Docket No. 46 (*Judgment*). The Court notes, however, that the amount deposited in Account No. 6RD–008905 was amended in the *Plea Agreement* from $204,852.90 to $100,000.00. *See Government's Version of the Facts*, which is part of the *Plea Agreement*, Criminal No. 06–322 (DRD), Docket No. 32, page 9. Defendants' argued in their objections to the *Report and Recommendation* that the amount deposited in RD Capital was lowered to $100,000.00. However, it is an uncontested fact that whatever amount remained deposited in the RD Capital investment account, does not change the fact that Freddy Garrido opened the RD Capital accounts with the sole purpose of concealing assets to defraud his creditors. This uncontested fact is the core of this matter, and was attested by Freddy Garrido under oath when he pled guilty on the charge of the Indictment, on July 13, 2007.

In the legal analysis, the bankruptcy court set forth the legal issues to be entertained by the bankruptcy court after all the evidence was submitted.

> *Garrido Jiménez*, No. 05–2111, in the United States Bankruptcy Court, District of Puerto Rico. Specifically, the defendant knowingly and fraudulently concealed at least the following properties:
> a. Condominium Unit 501–B at Floridays Orlando Resort in Orlando, Florida, for which a down payment of fifty-one thousand two hundred thirty dollars ($51,-230.00) was disbursed to Floridays Orlando Ventures, LLC;

The parties have agreed in the pretrial report that the ultimate issues to be decided by the court at this juncture are: whether the Debtor, and thus, the trustee, agreed to arbitrate any dispute with the Defendants; whether the Debtor, and thus, the trustee, is bound by any agreement to arbitrate executed by Virgilio Garrido and Catherine Ríos; whether the agreements to arbitrate executed by Virgilio Garrido and Catherine Ríos are valid and enforceable pursuant to the laws of the Commonwealth of Puerto Rico; and, whether the court should exercise its discretion and deny arbitration.

*See Opinion, Report and Recommendation*, Adv. Proc. No. 06–236(ESL), Docket No. 46, p. 14.

After considering the evidence submitted at trial and the post-trial memorandums, the bankruptcy judge concluded:

1. Under applicable Puerto Rico law, to wit, 31 L.P.R.A. § 3371, a "contract exists from the moment one or more persons consent to bind himself or themselves ..." Pursuant to 31 L.P.R.A. § 3374, the "contract shall only be valid between the parties who execute them and their heirs, ..." The bankruptcy judge concluded that "[t]he Debtor was not a party to the arbitration agreement signed by Mr. Virgilio Garrido and Ms. Catherine Ríos." *See Opinion, Report and Recommendation*, Adv.

> b. Tract No. 360 of approximately 1908.6199 square meters, which is part of Parcel 2244, located in Vieques, Puerto Rico, and was purchased for approximately $25, 000.00; and
> c. an amount of at least $204,852.90 in Account No. 6RD–008905 at RD Capital Group, Inc.
> All in violation of Title 18 *United States Code*, Section 152(1). *See* Criminal No. 06–322 (DRD), Docket No. 1.

Proc. No. 06–236 (ESL), Docket No. 46, p. 14.

2. "The court agrees with the plaintiff that there is no valid agency contract under the facts of this case." *See Opinion, Report and Recommendation*, Adv. Proc. No. 06–236 (ESL), Docket No. 46, p. 14. "Virgilio Garrido and Catherine Ríos were not binding themselves to render services or do something for the account or at the request of Freddy Víctor Garrido. 31 L.P.R.A. § 4421." *Id.* "Virgilio Garrido and Catherine Ríos were 'straw man' to Freddy Víctor Garrido to conceal assets from Debtor's creditors." *Id.* "This fact is undeniable as Freddy Víctor Garrido plead guilty to an indictment so charging." *Id.* at pp. 14–15.

## Applicable Law and Discussion

### A.  *Core v. Non Core.*

■  The first question before the Court is whether the district court has jurisdiction.  As stated above, the district court has jurisdiction to review a bankruptcy judge's report and recommendation made on a non core matter, pursuant to 28 U.S.C. § 157(c)(1).  The bankruptcy court found that "Plaintiff's causes of action could have been initiated before the state or federal courts, but will have an impact on the estate, thus, they are non core related matters." *See Opinion, Report and Recommendation*, Adv. Proc. No. 06–236 (ESL), Docket No. 46, p. 13.  The Court fully agrees with the determination of the bankruptcy court and briefly explains.

28 U.S.C. § 157, governs the matters to be referred to the bankruptcy court, as they are matters related to a bankruptcy case under Title 11.  Section 157(a) provides:

(a)  Each district court may provide that any or all cases under title 11 and any or all proceedings **arising under title 11 or arising in or related to a case under title** 11 shall be referred to the bankruptcy judges for the district.

(b)(1)  Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

. . .

(c)(1)  **A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.**  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and **after reviewing de novo those matters to which any party has timely and specifically objected.**  (Emphasis ours).

Although the statutory provisions of section 157(a), (b)(1) and (c)(1) appear to be rather simple, the distinction between "core" and "non core," "related to," "arising in" and "arising under" a title 11 case, is far from simple.

In *Marshall v. Stern, et al.*, 600 F.3d at 1054–1055, the Court held:

The 1984 Act does not specifically detail what it means for a civil proceeding to "arise under title 11," "arise in a case under title 11," "or relate [ ] to a case under title 11."  Our case law, however, holds that proceedings "arise under title 11" if they "involve a cause of action created or determined by a statutory

provision of title 11." *In re Harris,* 590 F.3d [730, 737 (9th Cir.2009)]. On the other hand, civil proceedings "arise in a case under title 11" when they are "not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *In re Easport [Eastport] Assocs.,* 935 F.2d 1071, 1076–77 (9th Cir.1991) (quoting *In re Wood,* 825 F.2d 90, 96–97 (5th Cir.1987); *see In re Harris,* 590 F.3d at 737.) [FN.25].[5] Like the Fourth, Fifth and Eight Circuit Courts of Appeals, we adopted without modification the Third Circuit's definition of **what constitutes a "related" proceeding:**

**The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.... An action is related to bankruptcy if the outcome could alter the debtor's right, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.** *In re Fietz,* 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)). (Emphasis ours).

In *Turner v. Universal Debt Solutions, Inc.,* 436 B.R. 153, 156 (Bankr.M.D.Alabama 2010), the Court held:

**"The ... test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy."** *Lawrence v. Goldberg,* 573 F.3d 1265, 1270 (11th Cir. 2009) (citations omitted). **"The proceeding need not necessarily be against the debtor or against the debtor's property."** *Id.* (citations omitted). Indeed, **"[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."** *Id.* at 1270–71 (citations omitted). (Emphasis ours).

*See also McKinstry v. Sergent, et al.,* 442 B.R. 567, 570–72 (Bankr.E.D.Kentucky 2011); *Herrans, et al. v. Lugo Mender,* 364 B.R. 463, 467–468 (D.P.R.2007).

In the instant case, the bankruptcy court found that the defendants did not consent to the bankruptcy court's entering a final order in the non core but "related to" matter. Hence, the bankruptcy judge submitted its proposed findings of fact and conclusions of law to the district court.

After having reviewed *de novo* the legal analysis and conclusions of law issued by the bankruptcy court, the district court adopts *in toto,* the conclusion reached by the bankruptcy court. The instant matter

---

5. The Court deems necessary to include FN.25, as it is illustrative of the provisions of section 157:

> *See In re Goodman,* 991 F.2d 613, 616–17 (9th Cir.1993) (discussing *In re Eastport Associates* and proceedings arising under title 11 or arising in a case under title 11); *see also* H.R.Rep. No. 95–595, at 6401 (Sept. 8, 1977), **U.S.Code Cong. & Admin. News 1978, p. 5963** ("The phrase 'arising under' has a well defined and broad meaning in the jurisdictional context. By a grant of jurisdiction over all proceedings arising under title 11, the bankruptcy courts will be able to hear any matter under which a claim is made under a provision of title 11."); *Collier* ¶ 3.01[4][c][I] (statutory language suggests that civil proceedings arise under title 11 "when the cause of action is one that is created by title 11." (Emphasis ours)).

is non core *albeit* related to a case under title 11, for this "action is related to bankruptcy [as] the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Turner*, 436 B.R. at 156. Hence, whether the arbitration agreement entered by third parties, to wit, Virgilio Garrido and Catherine Ríos, is enforceable against Freddy Garrido, and whether the defendants' arbitration agreement is valid, are both non core matters, but related to Freddy Garrido's bankruptcy estate, as any determination made either under state or federal law, will have an impact on "the handling and administration of the bankrupt estate." *Turner*, 436 B.R. at 156.

B. *Enforceability and Validity of the Arbitration Clause.*

■ In *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444–446, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006), the Court, citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), addressed the issue of "whether a claim of fraud in the inducement of the entire contract is to be resolved by the federal court, or whether the matter is to be referred to the arbitrators." *Id.* at 444–445, 126 S.Ct. 1204. In *Prima*, the Court held that "if the claim is fraud in the inducement of the arbitration clause itself—an issue which goes to the making of the agreement to arbitrate—the federal court may proceed to adjudicate it." *Id.* at 445, 126 S.Ct. 1204. "But the statutory language [the Federal Arbitration Act ('FAA'), § 4] does not permit the federal court to consider claims of fraud in the inducement of the contract generally." *Id.* at 445, 126 S.Ct. 1204. "We rejected the view that the question of 'severability' was one of state law, so that if state law

held the arbitration provision not to be severable a challenge to the contract as a whole would be decided by the court." *Id.* at 445, 126 S.Ct. 1204.

The Court further held in *Buckeye*, 546 U.S. at 445–446, 126 S.Ct. 1204:

First, as a matter of substantive federal arbitration law, **an arbitration provision is severable from the remainder of the contract.** Second, **unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance. Third, this arbitration law applies in state as well as federal courts.** (Emphasis ours).

As stated above, the bankruptcy court found that the arbitration agreement was unenforceable against Freddy Garrido, and consequently, against the Trustee, as Freddy Garrido never signed the arbitration agreement. The bankruptcy court further found that there was no agency relationship between Freddy Garrido and his brother Virgilio nor between Freddy Garrido and Catherine Ríos.

Most importantly, the core of this issue is the guilty plea made by Freddy Garrido, which indeed is of the essence to address the factual and legal issues that stem from the questionable actions of the defendants. Whether or not all the investment accounts were opened with the intent to defraud Freddy Garrido's creditors, can be easily answered in the affirmative based on the evidence presented: (a) the sleaze plan concocted by Freddy Garrido and his counterparts at RD Capital; (b) the irregularities, omissions, and intentional errors committed by Domínguez and Blum when opening the investment accounts under the name of third parties knowing that the true owner of the funds deposited in said accounts was Freddy Garrido; and (c) Freddy Garrido's last desperate intent of

filing of the bankruptcy petition, wherein Freddy Garrido tried unsuccessfully to conceal most of his valuable assets, with the intent to defraud his creditors. It is uncontested that Freddy Garrido's guilty plea is clear proof that he never intended to pay his creditors and most importantly, that Freddy Garrido attempted to defraud the system once again.

It is well settled, that a party cannot play "fast and loose with the courts" to advance its own interest. *See Patriot Cinemas, Inc. v. Gen. Cinemas Corp.*, 834 F.2d 208, 212 (1st Cir.1987); *Payless Wholesale Distributors, Inc., et al*, 989 F.2d 570, 571 (1st Cir.1993). In the instant case, there is absolutely no rational reason for Freddy Garrido to "play fast and loose" with the bankruptcy court, except to defraud his creditors, and keep the lottery prize for himself.

On the same premise, Messers. Dominguez and Blum knew before the investment accounts were opened, as admitted in their testimony, that the procedure followed by RD Capital to open the investment accounts under the names of Virgilio Garrido and Catherine Ríos, as instructed by Freddy Garrido, violated the provisions of the Securities laws and regulations.

Based on these premises, the Court will summarize and analyze the objections filed by the defendants.

1. The bankruptcy court erred when it concluded that the defendants knew or should have known that the funds deposited in the RD Capital investment accounts belonged to Freddy Garrido.

The district court disagrees with the defendants, as the guilty plea entered by Freddy Garrido, as well the testimony of Domínguez, confirms that Garrido expressly agreed to the Government's Version of Facts which is part of the *Plea Agreement,* see Criminal No. 06–322(DRD), Docket No. 32, page 9, that he

knowingly and fraudulently concealed property belonging to the estate of Freddy Garrido. *See Infra,* page 8, n. 4. Moreover, a review of Joint Exhibit A, Virgilio Garrido's application to open the RD Capital investment account, clearly shows the following: (a) the source of funds for this account is "Lottery/Gaming;" (b) Virgilio Garrido is the sole individual in this account, as he is the only individual signing the application to open the account. Hence, the only individual bound by the provisions of the account agreement, including the arbitration clauses.

2. The bankruptcy court erred when it concluded that Freddy Garrido was not bound by the arbitration agreement, which is part of the investment account contract, pursuant to the applicable agency contract law. Hence, Virgilio Garrido and Catherine Ríos were "agents" of Freddy Garrido, hence, Freddy is bound by the acts of his agents.

The bankruptcy court found that there was no agency contract between Freddy Garrido, his brother Virgilio Garrido, and his former daughter in law Catherine Ríos. Hence, the arbitration agreement cannot be enforced against Freddy Garrido nor the Trustee. The district court agrees, and briefly explains.

The Court notes that the brokerage/investment account opened by Virgilio Garrido is an individual account, as opposed to a joinder account. *See* Joint Exhibit A, Case No. 08–1663 (DRD), Docket No. 1–5, Exhibit B. The account agreement shows that Virgilio Garrido signed the agreement on January 22, 2004, and was the only authorized person to manage account number 6RD–008525. The account opened by Catherine Ríos, was also opened as an individual account, as opposed to a joinder account. *See* Joint Exhibit B, Case No. 08–1663 (DRD), Docket No. 1–5, Exhibit G. The account agreement shows that

Catherine Ríos signed the agreement on December 10, 2004, corresponding to the account number 6RD–008905. However, on December 10, 2004, Ms. Ríos also signed a document entitled *Full Trading Authorization with Privilege to Withdraw Money and/or Securities* authorizing Freddy Garrido "as his or her agent and attorney in fact to buy, sell (including short sales) and trade in stocks.... The undersigned hereby agrees to indemnify and hold you harmless from and to pay promptly on demand any and all losses arising therefrom or debit balance due thereon.... This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm." *See* Case No. 08–1663(DRD), Docket No. 1–5, Exhibit E. The Court notes, however, that this document is not signed by Freddy Garrido, hence, Freddy Garrido has no obligation to do anything for Catherine Ríos.

■■■■■ The district court agrees with the analysis made by the bankruptcy court on the applicability of the Puerto Rico agency contract law, and incorporates the same herein.

> Pursuant to the laws of Puerto Rico, a "contract exists from the moment one or more persons consent to bind himself or themselves ..." 31 L.P.R.A. § 3371. The contract "shall only be valid between the parties who execute them and their heirs, ..." 31 L.P.R.A. § 3374. The Debtor [Freddy Garrido] was not a party to the arbitration agreement because he did not sign the same. Consequently, the Debtor is not bound by the arbitration agreements signed by Mr. Virgilio Garrido and Ms. Catherine Ríos. The court agrees with the plaintiff that there is no valid agency contract under the facts of this case. Virgilio Garrido and Catherine Ríos were not binding

themselves to render services or do something for the account or at the request of Freddy Víctor Garrido. 31 L.P.R.A. § 4421. Virgilio Garrido and Catherine Ríos were "straw man" to Freddy Víctor Garrido to conceal assets from Debtor's creditors. This fact is undeniable as Freddy Víctor Garrido plead guilty to an indictment so charging.

3. The Trustee lacks standing to pursue the recovery of damages from the defendants.

Plaintiff correctly alleges that standing was not an issue before the bankruptcy court at trial stage. "Both parties agreed that the only controversy before the Bankruptcy Court was whether there is a valid arbitration agreement to be enforced." *See* Docket No. 9, page 18. The Court agrees that standing was not an issue at the time of trial, hence, the defendants are impaired to raise at the appeal stage. What was not alleged at the bankruptcy proceedings cannot be alleged on appeal. *See generally In re Lane*, 991 F.2d 105 (4th Cir.1993); *American Federation of Government Employees, Local 3936, AFL–CIO v. Federal Labor Relations Authority*, 239 F.3d 66 (1st Cir.2001); *Shankles v. Costa Armatori, S.P.A.*, 722 F.2d 861 (1st Cir.1983).

4. The bankruptcy court erred when concluding that RD Capital acting through its officers, Messrs. Domínguez and Blum, violated the applicable customer identification rules, at the time the brokerage accounts were opened under the names of Virgilio Garrido and Catherine Ríos.

The district court simply refers to the facts stipulated by the parties, as set forth by the bankruptcy court in its *Opinion, Report and Recommendation*, Adv. Proc. No. 06–236 (ESL), Docket No. 46, p. 3, and adopts them. The bankruptcy court found:

The parties have **stipulated** to the following uncontested facts: RD Capital is a brokerage house authorized to and conducting business in the Commonwealth of Puerto Rico; Ramón Domínguez is the President of RD Capital; Jorge Blum is the Chief Compliance Officer for RD Capital; **these defendants never met personally with Virgilio Garrido; these defendants never met personally with Catherine Ríos; these defendants never spoke to Catherine Ríos; Virgilio Garrido never had any personal contact with any person from RD Capital; and,** Debtor, **Freddy Víctor Garrido Jiménez, met with Ramón Domínguez and Jorge Blum and with nobody else from RD Capital concerning accounts 6RD–008525 and 6RD–008905.** (Emphasis ours).

5. The bankruptcy court erred when determining certain findings and excluding others that may be relevant to the issues at hand.

The district court finds that this objection constitutes a non-issue, as the core of this matter is the testimony provided by Freddy Garrido at the guilty plea hearing, as well as the sentencing hearing. Clearly, Freddy Garrido had the intention to conceal assets to defraud his creditors since the moment that he won the lottery prize. In the process, Freddy Garrido was being aided and abetted, as well as professionally advised and assisted by RD Capital thorough its officers, Messrs. Domínguez and Blum, to achieve this task. The only misstep was the filing of Freddy Garrido's bankruptcy petition.

6. The bankruptcy court erred when it applied the legal analysis followed in *Prima Paint, supra,* and *Buckeye, supra,* to the pending issues in this case.

As stated above, the jurisdictional issue pending before the bankruptcy court is twofold: (a) whether the issue regarding the arbitration agreement was core or non core, and if not a core proceeding, (b) whether it was a related to proceeding. It is a non-delegable duty of the bankruptcy court to make the determination on whether it has jurisdiction to entertain the specific issues, such as, the validity and enforceability of the arbitration agreement. In addition, the bankruptcy court had to inquire whether the validity of the arbitration agreement had to be referred to arbitration, or whether it can be severed from the contract provisions. In any event, whether a contract is valid or not, is a task best reserved to the courts, as opposed to an arbitrator. *See Prima Paint,* 388 U.S. 395, 87 S.Ct. 1801; *Buckeye,* 546 U.S. 440, 126 S.Ct. 1204; *Large v. Conseco Fin. Servicing Corp.,* 292 F.3d 49 (1st Cir.2002).

7. The defendants invite the district court to bear in mind that it was Virgilio Garrido, not Freddy Garrido, who personally collected the lottery award.

The district court finds, however, that this objection is a **non-issue,** based on the guilty plea made by Freddy Garrido.

### C. *A Final Note.*

The district court fully agrees with the findings and conclusions reached by the bankruptcy court, as there is no clear error in the objected findings nor as to the non-objected findings. The district court agrees with the recommendations made by the bankruptcy court, after having reviewed *de novo* the conclusions of law made by the bankruptcy court, as the district court did not find any legal errors, and the analysis made by the bankruptcy court is solidly based on the evidence presented and the applicable law. Furthermore, the district court did not find an abuse of discretion by the bankruptcy court in its ruling.

The instant matter is indeed a complex issue, which warranted the detailed analysis and the expertise of the bankruptcy court. The district court fully agrees with the bankruptcy court's finding that the validity of the arbitration agreement is a non core issue *albeit* related to a case under Title 11, as the bankruptcy court determination will have a direct impact on the administration of Freddy Garrido's bankruptcy estate. The district court further finds that the bankruptcy court is certainly best prepared to make this determination.[6]

### Conclusion

For the reasons set forth above, the *Opinion, Report and Recommendation* entered by the bankruptcy court on May 28, 2009, Adv. Proc. No. 06–0236 (ESL), Docket No. 46, Bankruptcy Case No. 05–2111, is affirmed, and the instant bankruptcy appeal is dismissed with prejudice. The *Opinion, Report and Recommendation* issued by the Hon. Enrique S. Lamoutte shall be published as an *addendum* of the instant *Order Adopting Report and Recommendation*. This matter is referred to the bankruptcy court for further proceedings. Judgment will be entered accordingly.

IT IS SO ORDERED.

### ATTACHMENT

### OPINION, REPORT AND RECOMMENDATION

*TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO:*

This adversary proceeding is before the court for the limited purpose of determin-ing whether the arbitration agreements signed by Mr. Virgilio Garrido (also referred to as "Virgilio") and Ms. Catherine Ríos (also referred to as "Catherine"), relative to accounts opened with RD Capital Group, Inc. ("RD Capital") are valid and enforceable as to Mr. Freddy Víctor Garrido Jiménez (the "Debtor" or "Freddy Víctor"). Plaintiff, the Chapter 7 trustee for the estate of the Debtor, alleges that the arbitration agreement signed by Mr. Virgilio Garrido and Ms. Catherine Ríos (Accounts 6RD–008525 and 6RD–008905) cannot be enforced against the Debtor, Freddy Víctor Garrido Jiménez, because he did not sign the same. Plaintiff also alleges that the agreements are null and void pursuant to applicable state law, that is, because the consent was obtained through deceit, there was no consideration, and the agreement was contrary to law and good morals as it was intended to conceal assets from Debtor's creditors. After considering the evidence presented at the hearings and the parties' legal memoranda, the court finds that the arbitration agreements are unenforceable as to the Debtor, Mr. Freddy Víctor Garrido Jiménez, and do not bind the Chapter 7 trustee, as the representative of the Debtor's estate. However, since the issue is a non core related matter, the bankruptcy court does not have authority to enter a final order. Consequently, the instant OPINION is a report and recommendation to the U.S. District Court.

### NATURE OF THE COMPLAINT

Before the court is an adversary proceeding commenced by the Chapter 7 trus-

---

**6.** "The Court need not go further for it refuses to write at length to no other end than to hear its own words resonate as to the instances alleged as errors by plaintiff." Where as here, [the bankruptcy judge] has produced a first-rate work product, a reviewing tribunal should hesitate to wax longiloquence simply "to hear its own words resonate." *See Lawton v. State Mut. Life Assu. Co. Of Am.*, 101 F.3d 218, 220 (1st Cir.1996); *In Re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F.2d 36, 38 (1st Cir.1993).

tee against RD Capital, Ramón Domínguez (Domínguez) and Jorge Blum (Blum) to recover damages suffered as a result of the defendants' acts in conspiring with the Debtor to hinder, delay and defraud his creditors [1], as well as to recover for the decline in value of the accounts, ill-gotten gains in commissions, interest and other benefits as a result of overtrading and sale of securities on margin. Plaintiff pleads as statutory predicates to the complaint breach of fiduciary duties under the laws of Puerto Rico; 31 L.P.R.A. §§ 3018, 5141; and violations to the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78a, et seq. and the Securities and Exchange Commission Rule 10b–5; and unjust enrichment.

RD Capital is a brokerage firm organized and existing under the laws of the Commonwealth of Puerto Rico. Domínguez and Blum are principals, and President and Vice President respectively, of RD Capital.

### FACTS

The parties have stipulated to the following uncontested facts: RD Capital is a brokerage house authorized to and conducting business in the Commonwealth of Puerto Rico; Ramón Domínguez is the President of RD Capital; Jorge Blum is the Chief Compliance Officer of RD Capital; these defendants never met personally with Virgilio Garrido; these defendants never met personally with Catherine Ríos;

these defendants never spoke to Catherine Ríos; Virgilio Garrido never had any personal contact with any person from RD Capital; Catherine Ríos never had any personal contact with any person from RD Capital; and, Debtor, Freddy Víctor Garrido Jiménez, met with Ramón Domínguez and Jorge Blum and with nobody else from RD Capital concerning accounts 6RD–008525 and 6RD–008905.

The testimonial and documentary evidence presented at the hearing will be considered for the limited purpose of determining whether there is a valid arbitration agreement.

Mr. Domínguez testified that he met Mr. Freddy Víctor Garrido Jiménez in 1978 when he used his services as a locksmith. Although Mr. Domínguez has known Mr. Freddy Víctor Garrido Jiménez for a long time, he does not consider him his friend. On one occasion Mr. Domínguez gave Mr. Freddy Víctor Garrido Jiménez the amount of $10,000 to play "Lotto" because he thought that Freddy Víctor had a "system" since he had won the Lotto before. Mr. Domínguez gave Freddy Víctor the money to play Lotto after an account had been opened with RD Capital in Mr. Virgilio Garrido's name. Mr. Domínguez lost the $10,000.

In 2004 Mr. Freddy Víctor Garrido Jiménez called Mr. Domínguez to invest funds that his brother had won in the lottery. Mr. Domínguez thought the money belonged to Mr. Virgilio Garrido because the

---

**1.** In February 2006 the Debtor, Mr. Freddy Víctor Garrido Jiménez plead guilty to count one of the indictment in CRIM. NO. 06–322(DRD). The count states that "[f]rom on or about March 9, 2005, to on or about March 16, 2006, in the District of Puerto Rico and elsewhere and within the jurisdiction of this Court, Freddy Víctor Garrido–Jiménez, the defendant herein, knowingly and fraudulently concealed property of the estate of the defen-

dant from the bankruptcy trustee, creditors, and the United States Trustee in connection with a case under Title 11, namely, In re Freddy Víctor Garrido Jiménez, No. 05–02111, in the United States Bankruptcy Court, District of Puerto Rico. Specifically, the defendant knowingly and fraudulently concealed at least the following properties: ... (d) an amount of at least $204,852.90."

Lottery checks were made out in Virgilio's name. Mr. Domínguez never saw or contacted Mr. Virgilio Garrido. He relied on the representations made by Mr. Freddy Víctor Garrido Jiménez. The account was opened in January 2004.

The applicable regulations [2] at the time, and in place since October 2003, required customer identification. The details regarding the opening of an account were handled by RD Capital's Operations Department.

Mr. Domínguez recognized his handwriting in the form used to open the account. (Trial Exhibit A). He included $50,000— $100,000 in the income space, and $500,- 000—$1,000,000 in the individual net worth, based on the amounts being deposited. All the information included in the form was based on Mr. Domínguez' assumptions.

Mr. Domínguez does not remember requiring any information regarding Mr. Virgilio Garrido's education. Mr. Domínguez knows Mr. Virgilio Garrido only through the documents submitted to open the account. Mr. Virgilio Garrido was marked in the form as an inexperienced investor. The form and documents to open the account in the name of Virgilio Garrido were given by Mr. Domínguez to Mr. Freddy Víctor Garrido Jiménez, who later brought them back for processing. RD Capital's Compliance Manual, Trial Exhibit 8, at page 65, specifically states in reference to opening an option account that "[p]rior to such approval, the CROP/ SROP will determine that the client is sufficiently aware of the risks involved in naked writing and can bear the financial

exposure." Clearly, the requirement was not met.

Mr. Virgilio L. Garrido Jiménez testified that, and the court gives full credence to his testimony, he is 44 years old, the highest grade he finished was first grade, and later he went to night school to learn to read. He can read but cannot write in Spanish. He cannot read nor write in the English language. He started working since he was 12 years old. For the past 19 years he has been working as an employee of Onesource, formerly Antilles Cleaners, providing maintenance services to office buildings, currently earning $5.85 per hour. He does not drive as he cannot afford a car, and has never owned a house.

Virgilio is Mr. Freddy Víctor Garrido Jiménez' brother. Freddy Víctor won the lottery and asked Virgilio to cash the tickets for him because he was having problems with his ex-wife. Freddy Víctor assured his brother that it would not cause him any harm. They went together to the lottery to cash the tickets. Freddy Víctor did not give his brother anything in return.

Freddy Víctor Garrido gave his brother Virgilio the documents to open a bank account. He signed the papers, but the telephone number and the address are those of Freddy Víctor. Virgilio does not understand anything on the form used to open the account, he just signed the papers.

After the bank account was opened, Virgilio learned that his health benefits were being cancelled due to the account he opened at Freddy Víctor's request. Virgilio asked Freddy Víctor to take out the money placed in his name so he could have the health card back. Freddy Víctor gave

---

**2.** Customer Identification Programs For Broker–Dealers, 31 CFR Part 103, Trial Exhibit 9, and SEC Rule 17a–3(a)(17), implementing Section 326 of the Patriot Act. These two important regulatory rules require that customer information be obtained, albeit for different purposes.

him some papers to this effect but he could not read them.

Virgilio testified that all actions regarding the cashing of the lottery tickets and the opening the bank accounts were done to help his brother. He never received any money. He does not know nor has ever spoken to Mr. Ramón Domínguez or Mr. Jorge Blum.

Ms. Catherine Ríos testified that she was married to Mr. Freddy Víctor Garrido Pagán, the son of Mr. Freddy Víctor Garrido Jiménez. They divorced by mutual consent in June 2007. She first saw the application and forms to open an account with RD Capital (Trial Exhibits E, F, and G) at her home when her former father in law brought them for her signature. Mr. Freddy Víctor Garrido Jiménez asked her to do him a favor; he had money in his brother's name but had to place it in someone else's name for a short time. After her former husband insisted, she accepted to sign the documents as a favor. Her former husband, Debtor's son, did not sign the documents because he had filed a bankruptcy petition.

The documents signed by Ms. Catherine Ríos were in blank as they would be filled in by someone at the RD Capital. She gave Mr. Freddy Víctor Garrido Jiménez a copy of her driver's license. The account's postal address as indicated in the document corresponds to that of Mr. Freddy Víctor Garrido Jiménez. She was never explained the terms and conditions of opening an account. She never received any funds or consideration in exchange for the favor. She had also previously signed deeds regarding properties belonging to her former father in law.

Ms. Ríos does not know Mr. Domínguez or Mr. Blum and has never talked to them.

Mr. Jorge Blum, testified that he is the compliance officer for RD Capital and oversees compliance with industry rules and regulations. He keeps the brokers informed of changes to the National Association of Securities Dealers (NASD) Rules and Regulations. Amongst the applicable regulations is 31 C.F.R. Part 103, Customer Identification Program (CIP), effective October 2003.

The accounts related to this proceeding were opened after October 2003, so they are subject to the Customer Identification Program. Mr. Blum admits to not having informed the brokers of the change in October 2003. The Customer Identification Program is part of the Anti Laundering Program. The compliance officer, that is, Mr. Jorge Blum, is the one responsible for the program. The applicable regulations require that the true identity of the customer be known. The regulations requiring customer identification were not followed.

Mr. Blum admitted that the brokers violated the Customer Identification Program because he failed to advise them of the change. However, pursuant to NASD Rule 3011, Mr. Domínguez, as President of RD Capital, is ultimately responsible for the implementation of the Anti Laundering Program. Pursuant to RD Capital's Compliance Manual, Mr. Domínguez is also in charge of continuing education.

When shown the form to open account number 6RD–008525 for Mr. Virgilio Garrido, the space for the I.D. verification is in blank. However, Mr. Blum reviewed the form and assigned an account number. Mr. Blum did not make an independent verification of the declared income. He admits that he never met or spoke with Mr. Virgilio Garrido. He was not involved in the investment part, and in fact, saw Mr. Virgilio Garrido for the first time in court while testifying.

Mr. Blum admits having prepared the letters presented at trial authorizing withdrawal of funds from the account (Trial Exhibits 2, 3, 4, 5, and 6), following the directions of Mr. Freddy Víctor Garrido Jiménez, who represented that the requests were those of his brother. This was done even when the account was in the name of Mr. Virgilio Garrido Jiménez, an account over which nobody else had authority to act. The letters were prepared because Mr. Freddy Víctor Garrido Jiménez would come to the office saying his brother needed money right away. Mr. Blum never verified the signature in the letters he prepared since, in his opinion, this is "a business of trust." In fact, a cursory verification of the signature in page 5 of Trial Exhibit A, the form to open the account with RD Capital, and the signatures in the letters, shows that the signatures are different from that of Mr. Virgilio Garrido Jiménez. When shown Trial Exhibit 1, it clearly appears that the signature in the bankruptcy petition filed by Mr. Freddy Víctor Garrido Jiménez is similar to the ones in the letters. Mr. Blum either knew, or should have known, that the funds in Mr. Virgilio Garrido's account really belonged to his brother, Mr. Freddy Víctor Garrido Jiménez.

When shown the form to open the account for Ms. Catherine Ríos, Mr. Blum stated that he filled the form as per the instructions of Mr. Freddy Víctor Garrido Jiménez, who informed him that his brother Virgilio wanted to change the account to one under a friend's name. Mr. Blum never verified the signature, he followed Mr. Freddy Víctor Garrido Jiménez' instructions, specifically, to transfer the same information in Virgilio's account to Catherine's. There was no verification of the truthfulness of the instructions. Mr. Blum never asked why the funds were being transferred as he accepted as true that the same were for a friend. The information transferred included the address. This failure is in clear violation of NASD Rule 3110j.

Mr. Blum acknowledged that the NASD Rules require that the Arbitration Agreement be sent to the address of the customer. However, he did not question the fact that the same address was included for the two accounts as, in his opinion, friends can have the same address.

Mr. Blum brazenly admitted having violated his responsibilities of insuring compliance with the NASD Rules and Regulations by not properly verifying the identification for Mr. Virgilio Garrido and Ms. Catherine Ríos, by not verifying their signatures, not meeting or talking to the customers Mr. Virgilio Garrido nor Ms. Catherine Ríos.

The evidence before the court clearly shows that the Debtor engaged in a series of "straw man" transactions in order to conceal, secrete and deplete his significant cash and other assets held in other persons' names, and hide those assets from his creditors. Debtor engaged in this conduct well before filing for bankruptcy, and his scheme was unraveled after the filing of his petition.

Relevant to this case was a prize for over $438,250 dollars that Debtor won in late 2004. In order to conceal the money, the prize was collected by Virgilio. In order to hide the prize, Debtor sought the brokerage services and advise of RD Capital. In January 2004, Debtor and RD Capital opened a brokerage account under Virgilio Garrido Jiménez' name, all the time knowing that the money belonged to Debtor (the "Account"). A New Account Form ("NAF") was signed by Virgilio when the account was opened. The NAF contains an arbitration agreement. The account was comprised of or included sev-

eral ancillary agreements, such as a Margin Agreement ("MA") and an Option Agreement ("OA"), both of which also contained arbitration agreements. The NAF, MA and OA (collectively the "Account Agreements") each contained a clearly legible disclaimer in their respective signature lines, highlighting the existence of the arbitration agreement in each document. Debtor personally procured the account agreement forms, had them filled and signed by Virgilio, and returned them to RD Capital.

In December 2004, Virgilio complained that having the account in his name jeopardized his government health care benefits. As a result, Debtor closed the account and transferred the funds to another account opened with RD Capital in Catherine's name. Just like with Virgilio; all parties knew and understood that the funds in the new account also belonged to Debtor. On this new account, Catherine also signed the documents containing the NAF, MA and OA. Debtor and Catherine signed a Full Trading Authorization Agreement ("FTAA") making Debtor an agent and attorney in fact for Catherine under the account with unrestricted powers and privileges to transact with Catherine's nominal account. The terms of the FTAA refer back to the "terms and conditions" of the Account Agreements. As was the case with Virgilio, Debtor took all the necessary steps to open the new account under Catherine's name. Catherine never saw nor met with anyone at RD Capital.

### CORE OR NON CORE

This court has jurisdiction over these proceedings pursuant to 28 U.S.C. § 157(a), which provides that the district court may refer all cases under title 11, and all proceedings arising under title 11, or arising in or related to a case under title 11, to the bankruptcy court of that district. That section further provides in subsection (b) that the bankruptcy court "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a)." Core proceedings are defined in § 157(b)(2), and subsection (3) provides that the bankruptcy judge shall determine whether a proceeding is a core proceeding or is otherwise related to a case under title 11.

A determination of whether a controversy is core or non-core depends upon its relation to the basic functions of the bankruptcy court and not on the federal or state basis for the claim. *In re Arnold Print Works, Inc.*, 815 F.2d 165, 169 (1st Cir.1987). If the proceeding, by its nature, arises only within the bankruptcy context because it involves a right created by federal bankruptcy law, then it is a core proceeding. *In re Wood*, 825 F.2d 90, 97 (5th Cir.1987). If an action would survive outside of bankruptcy, and in the absence of bankruptcy would have been initiated in a state or a district court, then it clearly involves a non-core matter. I Lawrence P. King et al., *Collier on Bankruptcy* P3.01[1][c][iv] at 3–27 (15th ed. 1991), citing *In re Colorado Energy Supply, Inc.*, 728 F.2d 1283 (10th Cir.1984).

The non-core related actions referred to by 28 U.S.C. § 157(a) are those that "potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankruptcy estate." *In re G.S.F. Corporation*, 938 F.2d 1467, 1475 (1st Cir.1991), *abrogated in part on other grounds*, *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992), citing *In re Smith*, 866 F.2d 576, 580 (3rd Cir. 1989). If the determination of the case

could have an effect on the bankruptcy estate, it is a related matter. *Id.* The intent is to enable bankruptcy courts "to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates." *In re Boston Regional Medical Center, Inc.*, 410 F.3d 100, 105 (1st Cir.2005).

Non-core related proceedings are those which are related to cases under title 11. As to this type of proceeding, a bankruptcy judge "shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge ...." 28 U.S.C. § 157(c)(1). The district court conducts a de novo review. *In re Sheridan,* 362 F.3d 96, 100 (1st Cir.2004). However, a bankruptcy judge may enter final orders and judgments concerning non-core but related matters if all parties to the proceeding have consented, § 157(c)(2); *G.S.F.,* 938 F.2d at 1476.

Subsection (c)(1) provides that a bankruptcy judge may hear a proceeding that is not a core proceeding, but is otherwise related to a case under title 11; however, the bankruptcy judge should submit proposed findings of fact and conclusions of law to the district court for *de novo* review. Subsection (c)(2) provides that if all the parties to the proceeding consent, the bankruptcy judge may hear and determine the matter and enter appropriate orders and judgments.

A bankruptcy judge may enter interlocutory orders in a matter being tried under § 157(c). 1 Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 3.03[2] (15th ed.

Rev.), citing *Elkins v. X–Alpha Int'l. Ltd. (In re Kennedy),* 48 B.R. 621 (Bankr. D.Ariz.1985); *Lesser v. A–Z Assocs., Inc. (In re Lion Capital Group),* 46 B.R. 850 (Bankr.S.D.N.Y.1985). An interlocutory order is one that does not finally determine a cause of action, but only decides some intervening matter pertaining to the cause, and requires further steps to be taken to enable the court to adjudicate the cause on the merits. *Collier* ¶ 5.07[1][a].

Plaintiff alleges jurisdiction pursuant to 28 U.S.C.A. § 1334 and that the proceeding is a core matter under 28 U.S.C.A. § 157(b)(2)(J), that is, "objection to discharges." Clearly, not one of the causes of action is an objection to Debtor's discharge [3]. The causes of action herein are aimed at recovering property of the estate for the alleged fraudulent conduct of the defendants. Liberally construed, the actions may arguably come under 28 U.S.C.A. § 157(b)(2)(A, E, or H), which include matters concerning the administration of the estate, orders for the turnover of property of the estate, and proceedings to recover fraudulent conveyances. However, the statutory predicates are the laws of the Commonwealth of Puerto Rico and the Securities and Exchange Act of 1934. The plaintiff does not raise causes of action under 11 U.S.C.A. § 542, turnover of property of the estate, or 11 U.S.C.A. § 548, fraudulent transfers and obligations.[4]

The defendants allege that the proceeding before the court is not a core matter. Plaintiff replies stating that by failing to present the issue they have waived it. The court disagrees. The procedural juncture of this case is that defendants' motion

---

**3.** The court notes that the judgment entered on June 13, 2006, in AP 06–0037 denied the Debtor's discharge.

**4.** These are actions that do not derive from the Debtor, and, arguably, the trustee may not be compelled to arbitration. *Hays and Co. v.*

*Merrill Lynch, Pierce, Fenner & Smith,* 885 F.2d 1149, 1153–1155 (3d Cir.1989); *In re EXDS Inc.,* 316 B.R. 817 (Bankr.D.Del.2004); *In re Hagerstown Fiber Ltd. Partnership,* 277 B.R. 181 (Bankr.S.D.N.Y.2002).

to dismiss was denied, and the court scheduled an evidentiary hearing for the limited purpose of determining whether there is a valid arbitration agreement. Defendants have not answered the complaint nor expressly consented to this court entering a final order. In fact, their position is that the matter be submitted to arbitration.

Plaintiff's causes of action could have been initiated before the state or federal courts, but will have an impact on the estate, thus, they are non core related matters. Since the defendants have not consented to this court entering a final order, it may only submit proposed findings and conclusions to the U.S. District Court.

### FEDERAL ARBITRATION ACT AND COURT'S JURISDICTION TO DETERMINE VALIDITY OF ARBITRATION AGREEMENT

The Federal Arbitration Act (FAA), 9 U.S.C.A. §§ 1–16, Section 2, was enacted to overcome judicial resistance to arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006). The Supreme Court in *Buckeye* held that arbitration clauses are severable from the remainder of the contract, the validity of the entire contract must be considered by the arbitrator in the first instance, and a challenge to the arbitration clause may be decided by a court. Thus, the courts must decide whether there is a valid consent to the arbitration agreement before compelling arbitration. The validity of an arbitration clause or agreement hinges on state contract law. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); *Campbell v. Gen. Dynamics Gov't Sys. Corp.*, 407 F.3d 546, 552 (1st Cir.2005); *Equal Employment Opportunity Commission v. Wood-*

*men of the World Life Ins. Society*, 479 F.3d 561, 565 (8th Cir.2007).

If the issues before this court were core proceedings, this court would follow the well reasoned analysis in *Brown v. Mortgage Electronic Registration Systems, Inc. et al*, 354 B.R. 591, 603 (D.R.I.2006), which concluded "that where a conflict exists between the Bankruptcy Code and the FAA, a bankruptcy court retains discretion to decide whether and when to compel arbitration if the at-issue proceeding is core." However, the issues before the court are non core related matters, and this court's discretion is limited.

### DISCUSSION

The parties have agreed in the pretrial report that the ultimate issues to be decided by the court at this juncture are: whether the Debtor, and thus the trustee, agreed to arbitrate any dispute with the Defendants; whether the Debtor, and thus the trustee, is bound by any agreement to arbitrate executed by Virgilio Garrido and Catherine Ríos; whether the agreements to arbitrate executed by Virgilio Garrido and Catherine Ríos are valid and enforceable pursuant to the laws of the Commonwealth of Puerto Rico; and, whether the court should exercise its discretion and deny arbitration.

Pursuant to the laws of Puerto Rico, a "contract exists from the moment one or more persons consent to bind himself or themselves..." 31 L.P.R.A. § 3371. The contract "shall only be valid between the parties who execute them and their heirs, ..."31 L.P.R.A. § 3374. The Debtor was not a party to the arbitration agreement because he did not sign the same. Consequently, the Debtor is not bound by the arbitration agreements signed by Mr. Virgilio Garrido and Ms. Catherine Ríos.

The court agrees with the plaintiff that there is no valid agency contract under the

facts of this case. Virgilio Garrido and Catherine Ríos were not binding themselves to render services or do something for the account or at the request of Freddy Víctor Garrido. 31 L.P.R.A. § 4421. Virgilio Garrido and Catherine Ríos were "straw man" to Freddy Víctor Garrido to conceal assets from Debtor's creditors. This fact in undeniable as Freddy Víctor Garrido plead guilty to an indictment so charging.

## CONCLUSION

In view of the foregoing, this court concludes that the arbitration agreement is not valid against the trustee, as representative of the Debtor's estate, because the Debtor, owner of the funds used to open the accounts at RD Capital, did not sign the same. The court recommends to the U.S. District Court that this conclusion be adopted.

**SO RECOMMENDED.**